## STATE *v.* BATES.

CONSTITUTIONAL LAW—MURDER—TRIAL BY EIGHT JURORS—PRIVILEGES AND IMMUNITIES—EX POST FACTO LAWS.

1. The description of the offense in the indictment included murder in the first degree, as well as in the second; but the crime was characterized as murder in the second degree, and the record showed that the defendant was actually tried for and convicted of that offense. *Held,* a trial by eight jurors did not violate section 10 of article 1 of the State Constitution, nor did such trial by eight jurors violate section 7 of the same article, which declares that "no person shall be deprived of life, liberty or property without due process of law."

2. Section 10 of article 1 of the constitution of Utah, which declares that "in courts of general jurisdiction, except in capital cases, a jury shall consist of eight jurors," is not in conflict with article 6 of the amended constitution of the United States, wherein it says that "in all criminal prosecutions the accused shall enjoy the right to * ·* * a trial by an impartial jury of the state and district wherein the crime shall· have been committed." The last article does not apply to trials under state laws.

3. Nor is section 10 of the state constitution repugnant to the first section of the fourteenth amendment of the federal constitution. The first clause of that section makes all persons born

or naturalized in the United States, and subject to its jurisdiction, citizens of the United States, and of the state wherein they reside; and the second clause, which declares that no state shall make or enforce any law abridging the privileges or immunities of citizens of the United States, has no application to jury trials under state laws in state courts. It does not refer to the privileges or immunities of the individual as a citizen of the state; it refers to the privileges and immunities of the individual as a citizen of the United States.

4. Nor does section 10 of the state constitution conflict with the third provision of section 1 of article 14 of the federal constitution, which declares that no state shall " deprive any person of life, liberty or property, without due process of law." That provision left the power with the people of the state, by a constitutional provision, to reduce the number of jurors for the trial of a cause in the state courts from 12 to 8.

5. The defendant was tried by 8 jurors on April 7, 1896, upon an indictment charging him with murder in the second degree, and convicted. The offense was committed on the 22d day of September, 1895, and the provision of the state constitution reducing the number of jurors from 12 to 8 took effect on January 4, 1896. *Held*, that the change did not deprive the defendant of a substantial right, and that the constitutional provision making the change was not *ex post facto* and void.

(No. 712.   Decided Dec. 10, 1896.)

Appeal from the Third District Court, Tooele county. Hon. John A. Street, *Judge*.

George Bates was convicted of murder in the second degree and sentenced to ten years' imprisonment, and appeals. *Affirmed*.

*Powers, Straup & Lippman*, for appellant.

The court had no jurisdiction to try the defendant with less than twelve men as a jury.

Section 10, of article 1, of our constitution is repugnant to the 14th amendment to the United States constitution.

It abridges the privileges of citizens and deprives citizens charged with crime of due process of law. Thompson on Juries 810, and cases cited; *Hill* v. *People*, 16 Mich. 355; *Cancemi* v. *People*, 18 N. Y. 128; *Work* v. *State*, 2 Ohio St. 296; *Flint River Steamboat Co.* v. *Roberts*, 48 Am. Dec. 186, note; *Hurtado* v. *People*, 110 U. S. 516; Opinion of the Justices, 41 N. H. 550.

Section 10 of article 1, of the constitution of Utah, in so far as it provides for the trial of criminal cases by eight men, is repugnant to and in conflict with section 12, of article 1, of the constitution of Utah, and is therefore void.

Section 12 guarantees to the accused the right "to have a speedy public trial by an impartial jury." This is without limitation or qualification. It means a jury of twelve men. *State of Nevada* v. *McClear*, 11 Nev. 40; *Carpenter* v. *State*, 34 Am. Dec. 116; *Wynehamer* v. *People*, 13 N. Y. 378, 446; *Cruger* v. *Hudson R. Railroad*, 2 Kern. 190; *People* v. *O'Niel*, 48 Cal. 257; *People* v. *Powell*, 87 Cal. 348.

When one section of a public act limits or abrogates a right existing prior to its enactment, and another section of the same act preserves that right, the courts, in giving force to the act, will disregard the section of limitation or abrogation and enforce the right.

Section 10 of the constitution must receive a strict construction for it deprives citizens of pre-existing rights. *Sherwood* v. *Reade*, 7 Hill 431; *Striker* v. *Kelley*, 2 Denio 323; *Sheup* v. *Spier*, 4 Hill 76.

Section 10 is clearly contradictory of section 12. There are several direct adjudications that the provision which is latest in position repeals the other. *Packer* v. *Sunbury R. R. Co.*, 19 Pa. St. 211; *Ryan* v. *State*, 5 Neb. 276, 282; *Gibbons* v. *Brittenum*, 56 Miss. 232; *Harrington* v. *Rochester*, 10 Wend. 547, 553; *Brown* v. *County Comr's*, 21 Pa. St. 37,

42; *Quick* v. *Whitewater*, 7 Ind. 570; *Albertson* v. *State*, 9 Neb. 429; *Sams* v. *King*, 18 Fla. 557; *Branagan* v. *Dulaney*, 8 Col. 408; *Gee* v. *Thompson*, 11 La. Ann. 657; *Farmers' Bank* v. *Hale*, 59 N. Y. 53.

"Law of the land" means "due process of law," according to the principles of the common law, rather than to the provisions of the statute law. That is to say, liberty, property and health shall be placed under the general laws governing society. Sedgwick Const. Law, p. 475; *Embury* v. *Couner*, 3 N. Y. 511; *Taylor* v. *Porter*, 4 Hill 140; *Randall* v. *Brigham*, 7 Wall. 523; *Parsons* v. *Russell*, 11 Mich. 129; *Westervelt* v. *Gregg*, 12 N. Y. 212; *Wynehamer* v. *People*, 13 N. Y. 378; *Wall* v. *Kennedy*, 2 Yerger (Tenn.) 554; *Pennoyer* v. *Neff*, 95 U. S. 714; *Murray* v. *Hoboken Land Co.*, 18 How. 217.

Section 10 of the constitution operates in this case as an *ex post facto* law. *Kring* v. *Missouri*, 107 U. S. 221; Cooley on Con. Lim. 330; *Kennett's Petition*, 24 N. H. 139; *Willard* v. *Harvey*, 24 N. H. 344.

*A. C. Bishop*, Attorney General.

*C. S. Varian* and *Benner X. Smith*, for respondent.

Zane, C. J.:

The defendant was tried upon an indictment charging him with the murder of the late John Nordquist, by feloniously, and with malice aforethought, striking him upon the head with a wooden pole. In the indictment the grand jury expressly characterized the crime as murder in the second degree. Upon the trial, the petit jury found the defendant guilty of murder in the second degree. The court overruled a motion for a new trial, and sentenced him to confinement in the state prison for the term of 10 years. From the order overruling the motion

for a new trial, and from the sentence, the case is before this court on appeal.

The trial was by a jury of 8 men, to which the defendant objected at the time, and demanded 12, and excepted to the denial of his objection and demand, and now assigns it as error. Section 10 of article 1 of the constitution of the state of Utah declares that "in capital cases the right of trial by jury shall remain inviolate. In courts of general jurisdiction, except in capital cases, a jury shall consist of eight jurors. In courts of inferior jurisdiction a jury shall consist of four jurors. In criminal cases the verdict shall be unanimous. In civil cases three-fourths of the jurors may find a verdict. A jury in civil cases shall be waived unless demanded." The punishment of murder in the second degree is imprisonment at hard labor in the penitentiary, "for not less than ten years, and which imprisonment may be extended to life." Laws 1890, p. 94. While the description of the offense included murder in the first degree, as well as murder in the second degree, the grand jury characterized the crime as murder in the second degree, and thereby expressed an intent to accuse the defendant of that offense, and not with a capital crime. The defendant was tried for murder in the second degree, as the rulings of the court and its charge to the jury show, and he was convicted of and sentenced for that crime. Therefore the crime was within the second clause of the above section.

But the defendant insists that section 7 of the same article, which says that "no person shall be deprived of life, liberty or property, without due process of law," secured him the right to be tried by 12 persons. To hold that the authors of the state constitution intended by the use of the phrase "due process of law" to require a jury

of 12 jurors in all cases would be to say, in effect, that they intended to create a repugnancy in that instrument. The rules of construction of constitutional law, as well as statute law, require that both sections shall be allowed to stand, and effect be given to each. We are of the opinion that they can stand together, and that no conflict was intended.

The defendant also claims that section 10, supra, conflicts with the constitution of the United States, and that it is void for that reason. Article 6 of the amendment to that instrument declares that "in all criminal prosecution the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed. * * *" This amendment applies to the United States government, not to the states. Limitations imposed on the powers of government by the constitution of the United States are upon that government alone, unless the states are mentioned. "The states may, if they choose, provide for the trial of all offenses against the states, as well as for the trial of civil cases in the state courts, without the intervention of a jury, or by some different jury from that known to the common law." Cooley, Const. Lim. (6th Ed.) pp. 29, 30; *Twitchell* v. *Com.*, 7 Wall. 321; *Edwards* v. *Elliott*, 21 Wall. 532.

Defendant's counsel also insists that section 10, *supra*, conflicts with section 1 of the fourteenth amendment to the constitution of the United States, as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, lib-

erty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The first clause of the section makes all persons born or naturalized in the United States, and subject to the jurisdiction thereof, citizens of the United States, and of the state wherein they reside. Citizenship of the United States is distinguished from citizenship of the state. All persons of the description mentioned are clothed with two distinct citizenships,—they are citizens of the United States, and of the state wherein they reside. As to the second clause of the section, it may be said that the privileges and immunities of an individual as a citizen of the United States go with him and protect him in any state, and, under treaties and the law of nations, into foreign lands and distant climes. But his privileges and immunities as a citizen of the state abroad depend upon courtesy and comity. The provision did not define or create those rights termed the "privileges" and "immunities" of citizens of the state. The power to do so is among those reserved to the people, to be exercised by the states, according to the will of its people, expressed in constitutions and laws. This provision does not limit the power of the state as to the establishment of courts or other tribunals, or as to the modes of procedure in them. It has no application to jury trials in state courts. *Slaughter-House Cases,* 16 Wall. 36.

It is further insisted that section 10 of the state constitution is within the limitation imposed by the third clause of section 1, above quoted, which declares that no state shall "deprive any person of life, liberty, or property without due process of law"; that this language entitled a person on trial charged with a crime against a state law to a common-law jury,—12 jurors. We have seen that article 6 of the amendments mentioned, guar-

antying a jury trial in criminal cases, does not mention the number of jurors necessary to constitute a jury; nor does it apply to trials in state courts. " Due process of law " is a general expression, and is equivalent to " law of the land." It permits the deprivation of life, liberty, or property according to law, not otherwise. It shields such rights from arbitrary power. Due process of law in a case like this requires a law describing the offense. The offense must be described in an accusation. The accused must be given his day in court. His trial must proceed according to established procedure, consisting of rules of pleading and practice. The admission of evidence for and against him must be according to established rules, and he must be convicted by the judgment of a competent court, and the punishment authorized by law. The definition of the offense, and the authority for every step in the trial, must be found in the law of the land. Nothing essential can emanate from arbitrary power. The rights of the defendant and the duty of the court are equally under the finger of the law. But the law defining crime, the rules of evidence, or the procedure, may be changed by competent authority, constitutional authority, or common law. It will not be denied that the common law requiring 12 jurors can be changed by the people of the United States by amending their constitution. And the question is: Have they, by the constitutional provision under consideration, prohibited the people of the state from reducing the number of jurors from 12 to 8? Have they, in using the phrase " due process of law," deprived the people of the state of Utah of the power to reduce the number of jurors in the trial of a felony to 8? They have assumed to do so, and we must presume that they believed the jury they provided most suitable and best calculated, under existing and

probable conditions, to discharge the duties of a jury. The purpose of the provision relied upon was to secure the rights to life, liberty, and property, and the benefits of just laws. If a jury of 8 men is as likely to ascertain the truth as 12, that number secures the end. There can be no magic in the number 12, though hallowed by time. Intelligence, impartiality, and integrity are the qualities that will enable and influence jurors to ascertain and declare the truth. Such a result does not depend upon any particular number. Legal process must submit to reform, in the light of experience and advancing intelligence. True principles must endure, but the methods, modes, and means of securing their application to human conduct, human rights and duties,—the social system,— will change with development and progress and more complicated conditions. We are of the opinion that the people of the state had the power, in the constitution, to abolish the common-law jury, or to change it as they have done in the section of their constitution above quoted.

In *Walker* v. *Sauvinet*, 92 U. S. 90, the court said: " A trial by jury in suits at common law pending in the state courts is not, therefore, a privilege or immunity of national citizenship, which the states are forbidden by the fourteenth amendment to abridge. A state cannot deprive a person of his property without due process of law, but this does not necessarily imply that all trials in the state courts affecting the property of persons must be by jury. This requirement of the constitution is met if the trial is had according to the settled course of judicial proceedings. *Murray's Lessee* v. *Improvement Co.*, 18 How. 280. Due process of law is process due according to the law of the land. This process in the states is regulated by the law of the state. Our power over that law

is only to determine whether it is in conflict with the supreme law of the land,—that is to say, with the constitution and laws of the United States made in pursuance thereof,—or with any treaty made under the authority of the United States." Ordronaux, Const. Lim. p. 261; *Hurtado* v. *California*, 110 U. S. 517.

The defendant was convicted of an offense committed on the 22d day of September, 1895, and section 10 of article 1 of the constitution of Utah went into effect on the 4th day of January, 1896; and it is also urged that it is an *ex post facto* law, and of no effect as to that offense. The defendant was tried on April 7, 1896; and the question is: Did the reduction of the number of jurors from 12 to 8, on the 4th of January, after the offense was committed, deprive the defendant of a substantial right? The law defining the offense, imposing the punishment, or the rules of evidence, was not changed. The tribunal for the trial was altered. Whether the alteration was prejudicial to the defendant cannot be known. We cannot infer that the jury who tried the case did not understand the evidence and the charge of the court, and impartially decide; that they did not reach as correct a verdict as 12 jurors would have reached. The law in force at the time of the trial threw around the defendant all the substantial protection that the law at the time of the commission of the offense did. The change complained of related to an instrumentality employed in the pursuit of the remedy. To investigate the evidence, the law employed a jury. We are of the opinion that the provision of the state constitution complained of was not *ex post facto*, and inapplicable to the offense charged, against the defendant.

Judge Cooley, in his work on Constitutional Limitations (6th Ed. pp. 326, 327), lays down the law in these

words: "But, so far as mere modes of procedure are concerned, a party has no more right in a criminal than in a civil action to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts, in existence when the facts arose. The legislature may abolish courts, and create new ones, and it may prescribe altogether different modes of procedure, in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime. Statutes giving the government additional challenges, and others which authorized the amendment of indictments, have been sustained and applied to past transactions, as, doubtless, would be any similar statute, calculated merely to improve the remedy, and, in its operation, working no injustice to the defendant, and depriving him of no substantial right." In his work on Statutory Construction (section 469), Judge Sutherland says: "Acts for transferring criminal cases to another court, or providing a new tribunal, or giving a new jurisdiction, to try offenses already committed, do not abridge any right, and are not *ex post facto.* When the offense was committed, the jury was, by statute, judge of the law. This act was repealed before the trial. Such change, as applied to that case, was held not *ex post facto.* Nor are treaties which provide for surrender of persons charged with previous offenses; nor statutes giving additional challenges to the government; statutes reducing the defendant's peremptory challenges, or modifying the grounds of challenges for cause;

statutes authorizing amendments to indictments; statutes regulating the framing of indictments, with a view to exclude redundancies, and reduce them to essential allegations; statutes to generally facilitate the routine of procedure, and preclude defendants from taking advantage of mere technicalities, which do not prejudice them. Where there has been a legal conviction, but an erroneous judgment thereon, which resulted, according to the law, in a discharge of the convict on reversal of the judgment, a law enacted subsequent to the commission of the crime, that, on such a reversel, the court in which the conviction was had should, on return of the record, pass such sentence thereon as the appellate court should direct, was not an *ex post facto* law." *Marion* v. *State*, 20 Neb. 233; *Gut* v. *State*, 9 Wall. 35; *Duncan* v. *Missouri*, 152 U. S. 377; *Calder* v. *Bull*, 3 Dall. 386.

Upon examination of the record, we find no error in the ruling of the court admitting evidence objected to by the defendant, or in the portions of the charge excepted to. We do not deem it necessary to particularly examine in this opinion such alleged errors. We find no errors against the defendant in this record. Therefore the judgment of the court below is affirmed.

BARTCH and MINER, JJ., concur.