THE STATE OF UTAH, Plaintiff, *v.* CHARLES H. HART, JUDGE OF THE THIRD DISTRICT COURT, Defendant.

Mandamus — When Proper Remedy to Compel District Court to Act—Sec. 4958, R. S. 1898.—When Jury of Twelve May Be Impaneled — Offense Committed Before Statehood. Inherent Rights of District Courts. Enabling Act, Constitution and Statutes Construed.

1. *Mandamus — When Proper Remedy to Compel District Court to Act — Sec. 4958, R. S. 1898.*

While mandamus will not lie to direct or control the decision of an inferior court, in a matter within its discretion, the writ will lie to compel it to act on matters within its jurisdiction of which it has erroneously refused to assume jurisdiction; and where a district court erred in holding that it had no authority or jurisdiction to impanel a jury of twelve men to try a defendant for a crime committed before statehood, and the State having no right of appeal under Sec. 4958, R. S. 1898, was left without a plain, speedy, or adequate remedy in the ordinary course of law, mandamus is a proper remedy.

2. *When Jury of Twelve May Be Impaneled — Offense Committed Before Statehood — Inherent Rights of District Courts.*

> The territorial laws in relation to jury trials in criminal cases not being repugnant to the constitution, but in harmony with it and the enabling act, and having been carried forward and continued in force by the constitution and the laws of the State, in respect to offenses committed prior to statehood, and not having expired by limitation, all persons charged with the commission of a felony, prior to statehood, may be tried in the State courts by a jury of twelve men; and when the necessity exists, a district court has the inherent right to impanel such jury by common law method.[1]

3. *Enabling Act — Constitution and Statutes Construed.*

> Enabling Act, Sec. 17, Const., Secs. 1 to 7; Art. 24, Const., Sec. 10; Art. 1, Ch. 1, Session Laws 1896, p. 77; Ch. 32, Session Laws 1896.
>
> Sec. 2480, R. S. 1898; Sec. 2485, R. S. 1898; Sec. 2486, R. S. 1898; Sub. Div. 9, Sec. 697, R. S. 1898; Sec. 720, R. S. 1898; Sec. 4369, C. L. U. 1888: Sec. 1835, C. L. U. 1876.

(Decided May 5, 1899.)

Original application in the Supreme Court by the State of Utah against Charles H. Hart, District Judge, for a writ of mandamus to compel him to impanel a jury of twelve men to try a defendant on a criminal indictment returned prior to the admission of Utah as a State. *Writ allowed.*

*Hon. A. C. Bishop, Attorney-General,* and *Graham F. Putnam, Esq.,* for petitioner.

While it is well settled that mandamus will not lie to control the action of an inferior court in a matter within its discretion, or to direct a judge how to decide a case, the law is equally well established that where a court erroneously refused to act in the matter within its juris-

---

[1] See *People* v. *Sloane,* 2 Utah, 326; *Clawson* v. *Utah,* 114 U. S., 477; *Thompson* v. *Utah,* 170 U. S., 343.

diction, this writ will issue to compel it to do so. Merrill, Mandamus, Secs. 203, 204; High, Extraordinary Legal Remedies, Sec. 251; *Wood* v. *Strother*, 76 Cal., 545; 9 Am. St., Rep., 249; Merrill, Mandamus, 203, and citations.

Or where the court refuses to try it, or grants a continuance for reasons. *Avery* v. *Superior Court*, 57 Cal., 247; *Rhodes* v. *Craig*, 21 Cal., 419; *People* v. *Scates*, 3 Scammon, 351; *State* v. *Ellis*, 41 La. Ann., 41.

Mandamus lies to compel the allowance or hearing of an appeal. Ex Parte Johnson, 94 U. S., 248; *Burgtorf* v. *Bently*, 41 Pac., 163; *ex parte* Parker, 120 U. S., 737.

Mandamus will issue to compel a trial judge to receive a verdict where he has refused on the ground that it was bad. *State* v. *Knight*, 46 Mo., 83; *Munkers* v. *Watson*, 9 Kan., 660.

*Messrs. C. F. & F. C. Loofborow*, and *Messrs. Powers, Straup & Lippman*, for respondent.

Miner, J.

On the 23d day of January, 1895, an indictment was duly returned by the grand jury to the district court of Salt Lake County charging and accusing Joseph R. Morris with the commission of a felony, by having agreed to receive a bribe while acting in the official capacity of county selectman of Salt Lake County, Utah. Said Morris was duly arraigned on the 7th day of December, 1895, and pleaded not guilty to said indictment. Thereafter, on the 22d day of December, 1898, said cause came on for trial in said court before the defendant, as presiding judge of said court. Thereupon the prosecuting officer requested said judge to impanel a jury of twelve men to try said cause, to which the defendant Morris objected for the reason that under the constitution and statutes of the State

of Utah, said court had no authority or jurisdiction to compel a jury of twelve men to try said cause, and because under Sec. 1, Art. 14 of Amendments to the Constitution of the United States, a defendant can not be placed in jeopardy without due process of law. Said judge refused to compel or impanel a jury of twelve men to try the case, for the reason that such act would be contrary to the law as announced by this court in the case of the *State* v. *Bates*, 14 Utah, 293, and refused to proceed and impanel or compel a jury of twelve men to go on with and try the case, to which action the plaintiff excepted.

The plaintiff claims that the State had no plain, speedy, or adequate remedy in the ordinary course of law, as there was no appeal from such refusal of the court to act in the premises, an alternative writ of mandate was prayed for and issued to compel said judge to impanel a jury of twelve men in said case, and proceed with the trial thereof.

The offense charged in the indictment was committed, and the indictment found before the State of Utah was admitted into the Union as a State. The State was admitted into the Union on the 4th day of January, 1896.

Sec. 10, Art. 1, Const. of Utah, provides, that "In capital cases, the right of trial by jury shall remain inviolate. In courts of general jurisdiction, except in capital cases, the jury shall consist of eight jurors." * * *

In conformity with this provision, the Legislature of the State, in 1898, enacted Section 1295, Rev. Stat. 1898.

Under the territorial statutes, the jury in criminal cases consisted of twelve persons. 2 Comp. Laws, 1888, Sec. 3065.

The case of *State* v. *Bates*, 14 Utah, 293, and *State* v. *Thompson*, 15 Utah, 488, practically embraced the same

questions involved in this case. In passing upon the question in the latter case the Supreme Court of the United States in *Thompson* v. *Utah*, 170 U. S., 343, held that the provision of Art. 1, Sec. 10, of the constitution of this State, providing for the trial of criminal cases, not capital, in courts of general jurisdiction by a jury composed of eight persons instead of twelve, is *ex post facto* in its application to felonies committed before the Territory became a State, because, in respect to such crimes the Constitution of the United States gave to the accused at the time of the commission of his offense, a right to be tried by a jury of twelve persons, and made it impossible to deprive him of his liberty except by the unanimous verdict of such jury. The judgment of the court below was reversed, and the cause remanded for further proceedings not inconsistent with such opinion. The result of this decision was to restore the defendant Thompson, who had been tried and convicted by a jury of eight persons, for an offense alleged to have been committed prior to the admission of the State into the Union, to the status he occupied before such trial and conviction, a position like that in which Morris is placed who was also charged with a felony committed prior to the admission of the State into the Union.

The supreme court having determined in *Thompson* v. *Utah*, *supra*, that under such circumstances a party is entitled to be tried by twelve jurors, it remains to be determined whether in such a case mandamus is a proper remedy, and second, whether a jury of twelve persons could lawfully be impaneled to try a case under the law as it stands.

The first question to be determined is, whether mandamus was a proper remedy in this case.

Under Sec. 4, Art. 8, constitution of this State, the

supreme court has original jurisdiction to issue writs of mandamus, certiorari, prohibition, quo warranto, and habeas corpus, and has general appellate jurisdiction.

Sec. 3641, Rev. Stat. 1898, provides that a writ of mandamus "may be issued, by the supreme court, or by a district court or a judge thereof, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." * * *

Sec. 3642 provides that this writ must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law.

The record shows that the presiding judge refused to impanel a jury of twelve persons to hear and try the case, and declined to proceed to the hearing of said cause because the court had no jurisdiction to impanel such a jury, and that to do so would be contrary to law. From this ruling of the court the State had no right of appeal. Rev. Stat. 1898, Sec. 4958.

As we have seen, the defendant could only be tried by a jury consisting of twelve men.

While it is clear that mandamus will not lie to direct or control the decision of an inferior court in a matter within its discretion, or to direct a court how it shall decide a case, the law is clearly established that when a court erroneously refuses to act in matters within its jurisdiction, the writ will lie to compel it to do so.

In Merrill on Mandamus, Sec. 203, it is said that when a court refuses to try a case, erroneously deciding that it has no jurisdiction, it will be compelled by writ of mandamus to assume jurisdiction and proceed with the case. It is now well established that when an inferior court has refused to entertain jurisdiction on some matter preliminary to a decision of a case before it on the merits, or

refuses to act when the law requires it to act, or, where, having obtained jurisdiction in a case it refuses to proceed in the exercise thereof, a writ of mandamus is a fitting and proper remedy to set such court in motion and to speed the trial of a case so as to reach the proper end, when no action below was had on the merits; but such right will not lie to an inferior court to correct alleged errors occurring in the exercise of its judicial discretion. *Queens* v. *Justices of Middlesex*, 2 Q. B. Div., 516; Ex parte Parker, 120 U. S., 737; *Brown* v. *Buck*, 75 Mich., 274; *Avey* v. *Superior Court*, 57 Cal., 247; Ex parte Jordan, 94 U. S., 248; Ex parte Trapnall, 6 Ark., 9; *State* v. *Knight*, 46 Mo., 83; Ex parte Shellenberger, 96 U. S., 369; *People* v. *Van Tassel*, 13 Utah, 9; *People* v. *Scates*, 3 Scammon (Ill.), 351; Merrill on Mandamus, Secs. 203, 204; High on Extra. Rem., Secs. 150, 251.

We are of the opinion that the district court erred in its holding that it had no authority or jurisdiction to impanel a jury of twelve men to try this case.    In refusing to act in the premises, the plaintiff was left without any plain, speedy, or adequate remedy in the ordinary course of law, and the writ of mandamus was a proper remedy.

2. The second question for determination is whether a jury of twelve men can lawfully be impaneled in the case under the constitution and statutes as they now stand.

Sec. 17 of the Enabling Act provides, "That the convention herein provided for shall have the power to provide, by ordinance, for the transfer of actions, cases, proceedings, and matters pending in the supreme or district courts of the Territory of Utah, at the time of the admission of the said State into the Union, to such courts as shall be established under the Constitution to be thus formed, or to the circuit or district court of the United States for the district of Utah; and no indictment, action,

or proceeding shall abate by reason of any change in the courts, but shall be proceeded with in the State and United States courts according to the laws thereof, respectively. * * * And the circuit, district, and State courts here named shall, respectively, be the successors of the supreme court of the Territory as to all such cases arising within the limits embraced within the jurisdiction of such courts, respectively, with full power to proceed with the same and award mesne or final process therein." * * * These provisions in the act preserve the rights of persons who are charged with the commission of offenses prior to the admission of the State, and render them liable to punishment under the laws of the State.

Secs. 1 to 7, inclusive, of Art. 24 of the constitution provide that no interruption or abatement of any proceeding civil or criminal, then pending in the courts of the Territory when the State was admitted, shall result by reason of the change to State government.

Section 1 provides, "It is hereby declared that all writs, actions, prosecutions, judgments, claims, and contracts * * * shall continue as if no change had taken place, and all process which may issue under the authority of the Territory of Utah, previous to its admission into the Union, shall be as valid as if issued in the name of the State of Utah."

Section 2 provides, "All laws of the Territory of Utah now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are altered or repealed by the Legislature." * * *

Section 3 provides, "Any person, who, at the time of the admission of the State into the Union, may be confined under lawful commitment, or otherwise lawfully held to answer for alleged violation of any of the criminal laws of the Territory of Utah, shall continue to be

held or confined until discharged therefrom by the proper courts of the State."

Section 4 relates to fines, penalties, and forfeitures accruing to the Territory of Utah, and provides that they shall inure to the State.

Under Section 5, all recognizances taken before statehood shall remain valid, and shall pass to and be prosecuted in the name of the State.

Section 6 provides, " All criminal prosecutions and penal actions which may have arisen, or which may arise, before the change from a territorial to a State government, and which shall then be pending, shall be prosecuted to judgment and execution in the name of the State, and in the court having jurisdiction thereof. All offenses committed against the laws of the Territory of Utah, before the change from a territorial to a State government, and which shall not have been prosecuted before such change, may be prosecuted in the name, and by the authority, of the State of Utah, with like effect as though such change had not taken place, and all penalties incurred shall remain the same as if this constitution had not been adopted."

Section 7 provides, that all actions pending in the supreme and district courts of the Territory of Utah at the time the same shall be admitted into the Union, and all files, records, and indictments relating thereto, shall be appropriately transferred to the supreme and district courts of the State respectively, and thereafter all such actions, matters, and cases shall be proceeded with in the proper State courts.

These provisions of the constitution, in connection with the enabling act, clearly empower the State to proceed and try persons for offenses committed prior to the admission of the State into the Union.

While Section 10, Art. 1, of the constitution does not apply to offenses committed before statehood, the evident intention of the framers of the constitution was to carry forward existing laws, except as they were repugnant to the constitution, by a general provision so as to cover offenses committed prior to statehood, and this was done by the adoption of Section 2, Art. 24, of the constitution, which provides that all laws of the Territory of Utah, now in force, not repugnant to the constitution, shall remain in force until they expire by their own limitation or are altered or repealed by the Legislature. This view is consistent with the enabling act and the several provisions of the constitution, and not in conflict with the decision in *Thompson* v. *Utah*, 170 U. S., 343; which holds that Section 10, of Art. 1, was *ex post facto* in its application to felonies committed before the Territory became a State.

There is nothing in Section 10 that indicates an intention on the part of the framers of the constitution that its provisions were to apply to pending prosecutions for offenses committed before the adoption of the constitution, while if all the several provisions are read together in connection with the enabling act and the intendment favoring the constitutionality of the several enactments, so as to harmonize the several provisions, the conclusion becomes irresistible that the provisions of Section 10 were not intended to apply to this class of cases. Neither was it the intention of its framers to discharge from criminal liability all persons charged with crimes prior to the admission of the State. The plain meaning of the provisions referred to is to the contrary.

The territorial laws in force when the offense was alleged to have been committed provided for a trial by twelve jurors.

Section 2, Art. 24, Const., provides that all laws now in force, not repugnant to the constitution, shall remain in force until repealed, etc.

Since the adoption of the constitution, the manner of summoning a jury has been changed by the Legislature. With this exception the law with reference to a trial by jury in criminal cases remains the same as it existed prior to statehood, except as legislation has been framed in conformity with Section 10, Art. 1, Const. The constitution took effect January 4, 1896.

Ch. 1, Laws of Utah, 1896, page 77, was the first law enacted after statehood. This act relates to the manner of summoning a jury, and has no reference to the number necessary to the trial of a case. The repealing clause of this statute repeals all laws in conflict therewith.

Ch. 32, Laws of Utah, 1896, has reference to the method of summoning jurors into court, but does not fix the number, and contains no repealing clause.

By neither of the above provisions of the statute is the number of jurors in criminal cases in any manner changed, except as stated.

Section 2480, Rev. Stat. 1898, repeals all acts of the Legislature during its first session in 1896, with certain exceptions, among which are the acts for the transfer of cases from territorial to State courts, approved February, 1896, and having reference to the transfer and trying of all cases pending when the State was admitted, under the provisions of the enabling act and the constitution the same as if no change had taken place.

Section 2485, Rev. Stat. 1898, provides that "no offense committed, and no penalty or forfeiture incurred, under any statute hereby repealed, and before the repeal takes effect, shall be affected by the repeal, except that when a punishment, penalty, or forfeiture is mitigated by

the provisions herein contained, such provisions shall be applied to a judgment to be pronounced after the repeal."

Section 2486 provides, "No suit or prosecution pending when this repeal takes effect, for an offense committed, or for the recovery of a penalty or forfeiture incurred, shall be affected by the repeal, but the proceedings may be conformed to the provisions of the Revised Statutes as far as consistent."

Subdivision 9 of Sec. 697, Rev. Stat. 1898, gives every court power to devise and make new process and forms of proceedings consistent with law, necessary to carry into effect the power and jurisdiction possessed by it.

Sec. 720, Rev. Stat. 1898, provides: "When jurisdiction is, by statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given, and in the exercise of the jurisdiction, if the course of the proceeding be not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the statute or of the codes of procedure."

Sec. 4369, C. L. U., 1888, in force when this offense was alleged to have been committed, was carried into the Revised Statutes as Section 4052, and reads as follows:

"The rule of the common law that penal statutes are to be strictly construed has no application to the Revised Statutes. The provisions of the Revised Statutes are to be construed according to the fair import of their terms with a view to effect the objects of the statutes and to promote justice."

The manifest intent of these statutes and exceptions to the repealing statutes, was to preserve all provisions of the territorial statutes not repugnant to the constitution relating to offenses committed prior to the admission of the State, and where authority was given to authorize

19 Utah—29.

courts in the exercise of their jurisdiction, if the course of procedure was not specifically pointed out by statute, to adopt a suitable mode of procedure which might appear most conformable to the spirit of the constitution, the enabling act, and the codes of procedure. This construction is not only reasonable, but is according to the fair import of the terms of the statute, when made with a view to effect their object and promote justice.

In construing Section 1835, Laws of Utah, 1876, under a similar provision of the statute relating to a change from one code of laws to another, the territorial supreme court, in the case of *People* v. *Sloane*, 2 Utah, 326, held that the plain and evident intent of the Legislature was to steer clear of any difficulty arising from *ex post facto* laws, and to retain in force the former crimes and punishment act, so far as it related to offenses committed prior to the time the penal code went into effect; that the court could not consistently construe the statute to mean that the law-making power intended by the enactment of the statute to proclaim a general jubilee and jail delivery to all offenses committed prior to the passage of the act.

In the case of *Clawson* v. *Utah*, 114 U. S., 477, where under the laws of Congress in the trial of an indictment, the names of jurors placed in the box was limited by that act to 200, were exhausted, when the jury was partly impaneled, it was held that the district court had inherent power to issue a venire for an additional number of jurors, and this power was an incident to the authority and duty of the district court to hold its sessions, and try, by jury, indictments for crimes.

It is true that the mode of summoning a jury has been changed since the adoption of the constitution, but upon this subject, Judge Cooley, in his work on Constitutional Limitations (6th ed.), p. 326, says:

" But so far as mere modes of procedure are concerned, a party has no more right in a criminal than in a civil action to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place.   Remedies must always be under the control of the Legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts in existence when the facts arose. The Legislature may abolish courts, and create new ones, and it may prescribe altogether different modes of procedure, in its discretion, though it can not lawfully, we think, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime."

Judge Sutherland, in his excellent work on Statutory Construction, Sec. 469, says:

" Acts for transferring criminal cases to another court, or providing a new tribunal, or giving a new jurisdiction, to try offenses already committed, do not abridge any right, and are not *ex post facto* in their operation."

From these considerations it is evident that in all the enactments of the Constitutional Convention and the State Legislature, great care has been taken to preserve the status of all pending proceedings, and the district courts have been clothed with the power to assume and hold jurisdiction over and try cases pending, and persons charged with offenses committed prior to the admission of the State into the Union.   It therefore follows that all persons charged with the commission of a felony prior to the adoption of the constitution, are entitled to a trial in the State courts by a jury consisting of twelve men as provided by law at the time of the commission of the offense; that the laws in relation to jury trials in cases of felony committed prior

to statehood are still in force, except as they are found to be repugnant to the constitution, and that such laws, so far as this case is concerned, are not repugnant to the constitution, but are in harmony with it, and with the enabling act, and were carried forward, and are still in force as they have not been repealed, nor have they expired by their own limitation; that the territorial enabling act and statute providing for a jury of twelve men in criminal cases, is not repugnant to the constitution, and the same has not been repealed by any subsequent statute having reference to offenses pending when the State was admitted, and that the district court was expressly clothed with power to try such cases under the constitution and statute referred to.

While no necessity seems to exist for resorting thereto, we are also of the opinion that the district court had the inherent right to impanel a jury of twelve men to try said case by common law method, by issuing an open venire therefor, if necessary, in the absence of any express statute relating thereto, as held in the case of *Clawson* v. *U. S. supra.*

It is ordered that a writ of mandamus be issued as prayed for.

BARTCH, C. J., and BASKIN, J., concur.