# EX PARTE SANTIAGO ARAUJO.

San Juan, Criminal, No. 659.

APPLICATION FOR HABEAS CORPUS.

Porto Rico—Incorporated Territory—Tapia Case Followed—States—Territories—Personal Civil Rights—Political Rights.

    1. The principles of the Tapia Habeas Corpus Case, decided May 21, 1917, ante, 452, that Porto Rico has been incorporated into the United States by the Jones Act and otherwise, are followed in this case, and the conclusion therein is emphasized by the Military Draft Law and the President's proclamation as to the territories of Alaska, Hawaii, and Porto Rico, based on it. The Tapia Case concerns only personal civil rights which are the same for all Americans. Political rights, however, are not complete until a territory becomes a state of the Union, and the question of ultimate statehood is a political, and not a judicial, question.

Grand Jury—Infamous Crime.

    2. A person charged with violating a statute which includes hard labor as part of the punishment for its violation is accused of an "infamous crime" and entitled to a grand jury.

Adulterated Milk—Punishment.

    3. Under the local statute there must first be a sentence to imprisonment in a district jail for a term exceeding ninety days, before the court can in its discretion direct that the prisoner be put to labor upon public works.

"Infamous Crime"—Insular Courts—Presumption.

    4. It is not the punishment actually inflicted that makes a crime infamous, but the liability to an infamous punishment. The insular authorities having prosecuted a case in a certain manner, this court will indulge no presumption against their procedure.

"Infamous Crime"—Punishment—State Prison—Penitentiary—Jail.

    5. A person accused of an infamous crime is punishable by imprisonment in a state prison, which is the equivalent of a penitentiary. Imprisonment in a local jail is not the equivalent of

Ex parte Araujo.

imprisonment in a state prison, and is not within the constitutional provision requiring a grand jury.

Porto Rican Milk Adulteration Legislation—Federal Pure Food Legislation.

6. The local legislation concerning the adulteration of milk and the Federal pure food legislation of 1906 are in pari materia; offenses under the latter are misdemeanors and are presented by the district attorney without a grand jury.

Imprisonment—Time Within Which Punishment for Second Offense Begins to Run—Premature Application for Habeas Corpus.

7. A person sentenced to two terms of imprisonment cannot begin to serve the second until he has finished serving the first term, and an application for a writ of habeas corpus based on the second term of imprisonment is premature if he has not commenced serving the second term.

Right to Trial by Petit Jury—Waiver—Ignorance of Rights.

8. A person who does not know that he is entitled to a jury trial, and is tried and convicted by the court without a jury, does not waive his right to a jury trial, and can set up the defect after conviction.

Trial by Jury—State Constitutions—Constitution of the United States.

9. A state may dispense with trial by jury in minor offenses if the State Constitution permits, but the courts of the United States and incorporated territories cannot dispense with it on account of the 6th Amendment to the Constitution of the United States, which requires a jury trial "in all criminal prosecutions." Nevertheless a petty offense is not such a "criminal prosecution" because it was not such a common law, and the Constitution was framed with the common law in view.

Habeas Corpus—Procedure.

10. This court will not interfere with the administration of justice in the local courts except where constitutional rights have been clearly violated. Procedure in habeas corpus applications after conviction outlined.

Opinion filed May 31, 1917.

———

*Messrs. Marcelino Romany* and *José R. F. Savage* for petitioner.

Ex parte Araujo.

*Messrs. Howard L. Kern,* Attorney General, and *George S. Brengle,* Assistant Attorney General, contra.

HAMILTON, Judge, delivered the following opinion:

This is a petition for writ of habeas corpus filed by Santiago Araujo, restrained of his liberty by José Carmoega under alleged sentence dated May 18, 1917, of the local district court at San Juan under information brought against the petitioner charging the crime of offering for sale adulterated milk, under an act entitled "An Act to Provide a Punishment for Adulterating Milk or Offering or Keeping the Same for Sale," passed by the Legislative Assembly of Porto Rico and approved March 10, 1910. The said imprisonment is claimed to be illegal in that (1) the trial was without a presentment or indictment by a grand jury, as provided in article 5 of the Amendments to the Constitution of the United States, the charge being one of an infamous crime; (2) that the prisoner was so tried by a court composed of one judge, thus depriving the prisoner of trial by a jury of twelve men, as provided by article 6 of the Amendments to the Constitution of the United States; and (3) that the offense charged is "infamous crime." The exhibits show the facts as set out in the petition.

This application is made, following the Tapia Habeas Corpus Case decided May 21, 1917, ante, 452, but the circumstances are different in that there the petitioner claimed his rights during the course of the trial in the local court; in the case at bar the petitioner claimed none of them in the local court; and now sets up that they were of a nature which could not be waived and therefore need not have been set up. In the former case there

IX. Porto Rico.—33.

could still be a legal trial; here the petitioner has already been tried.

1. For the purposes of the present case the court follows the principles of the Tapia Habeas Corpus Case decided May 21, 1917, so far as applicable here, these being that Porto Rico has been by the Jones Act and otherwise incorporated into the United States. This conclusion is emphasized by the recent Military Draft Law and Presidential proclamations as to the territories of Alaska, Hawaii, and Porto Rico, based on it. Broad as are the limits of the United States, there is not room enough for two classes of citizens. All Americans in Porto Rico, regardless of race or origin, have exactly the same rights. It is to be borne in mind, however, that the Tapia decision relates only to personal civil rights. These are the same for all Americans. Political rights, however, as observed by Chief Justice Marshall in American Ins. Co. v. 356 Bales of Cotton, 1 Pet. 511, 542, 7 L. ed. 242, 255, are not complete until a territory has become a state of the Union. Congress has the authority to grant as much or as little in this regard as it thinks circumstances justify in preparing the territory for its future life as a part of the Union. Congress, for instance, has always retained the appointment of governor and other officials in the hands of the President, so as to insure close identity of feeling and administration with the nation at large, commonly leaving the legislature in what were formerly called territories of the second or higher grade, that is self-governing, to election by the people of the territory. The question of ultimate statehood is a political not a judicial one, not for the courts but for Congress; the political power, which determines when local circumstances justify passing an enabling act, under which the people pass upon that

Ex parte Araujo.

question. This period has differed in different cases. Although the Union is one of states, and territories as states in the making are without true sovereign rights, a territory incorporated into the Union is incorporated for all national purposes. The rights of citizens bring with them the duties of citizens, for rights and duties are but correlative terms, the one implying the other. Although local institutions remain little affected, there is but one sovereign, the American people—there is but one country, the United States,—there is but one patriotism, and that is American.

Under these principles Porto Ricans, that is to say Americans in Porto Rico, are entitled to all the rights, privileges, and immunities of other Americans, and among these are the right of immunity from trial "for a capital or other infamous crime unless on a presentment or indictment of a grand jury" under the 5th Amendment of the Constitution of the United States, and under the 6th Amendment "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the . . . district wherein the crime shall have been committed," together with cognate rights. The question in the case at bar relates both to grand and petit jury.

2. The right to a grand jury is dependent upon the question whether the case at bar is an "infamous crime," and to determine this we must examine the local statutes involved. The offense charged is covered by § 1 of the Act of March 10, 1910, Revised Statutes of Porto Rico, § 5787, which is as follows: "Every person who adulterates or dilutes milk with the intent to offer the same for sale, or cause or permit it to be offered for sale, and every person who sells, offers or keeps the same for sale, is guilty of a misdemeanor and shall be punished by imprison-

ment in jail not exceeding one month, and in addition to such punishment the adulterated milk shall be confiscated: Provided, That the person found guilty a second time of adulterating, diluting, selling, offering or keeping adulterated milk for sale shall be punished by imprisonment for a term of from six months to one year, and his license shall be revoked. The sentence imposed upon such person for a second offense shall be published in two of the papers having the largest circulation in the Island, and shall also be made known by bills which shall be posted in public places and at the domicil or establishment of the guilty persons. The adulteration or dilution of milk may be proved in the usual manner provided by law for the trial of criminal cases."

It is also provided by a separate statute passed March 8, 1906, (P. R. Rev. Stat. § 6359) that "whenever a person is convicted of a misdemeanor and is sentenced to imprisonment in a district jail for a term exceeding ninety days, the court may, in its discretion, direct that he [shall] be put to labor upon public works during the term of his imprisonment."

Infamy in the ordinary sense of the word would seem to follow from the publicity given punishment for the second offense under the terms of the original act, and it has been held since the time of Blackstone that hard labor constitutes infamy at common law. 4 Bl. Com. 377. This is involuntary servitude for crime under the Constitution. Ex parte Wilson, 114 U. S. 417, 429, 29 L. ed. 89, 93, 5 Sup. Ct. Rep. 935, 4 Am. Crim. Rep. 283. Of this principle there can be no doubt, and the length of the time of hard labor is not material. In a case where two days' labor was involved, the offense was held to be an infamous one. United States v. Wong Dep Ken, 57 Fed. 206. How far these

Ex parte Araujo.

difference elements, however, are embraced in the case at bar must be examined.

3. It will be observed that under the local statute there must first be a sentence to imprisonment in a district jail for a term exceeding ninety days, before the court can in its discretion direct that the prisoner be put to labor upon public works. It may well be that the sentence, to be entire, should embrace both imprisonment and labor, but the prerequisite of the two is "imprisonment in a district jail for a term exceeding ninety days." In the case at bar the total terms of imprisonment imposed for the three charges amount to ninety days, so that the court could not have imposed hard labor in this case, and in point of fact did not impose hard labor in this case. The main statute of 1910 authorized punishment "by imprisonment in jail not exceeding one month," and for a second offense directs imprisonment for a term between six months and a year. In point of fact, there were three punishments inflicted, each offense receiving thirty days. Whatever the motive of the court, no offense was treated as a second offense. Each one of the three received the punishment as for a first offense.

4. The law is, however, that it is not the punishment actually inflicted that makes the crime infamous, but the liability to an infamous punishment, such as hard labor. Ex parte Wilson, 114 U. S. 426, 29 L. ed. 92, 5 Sup. Ct. Rep. 935, 4 Am. Crim. Rep. 283. Was there infamous punishment possible in the case at bar?

This resolves itself into the question, not of what the court did do, but what it might have done. The papers exhibited show that the man was arrested and tried for three different offenses committed on three different dates, but there is no indication in

Ex parte Araujo.

the file relating to the second offense that it was regarded or treated in any way as a second offense. The warrant, the judgment, and every paper speaking of the offense at all contain no indication of there ever having been a previous offense of the same character. The same is true of the third case against him. The local government, against whom the offense was committed, having through its prosecuting department treated this as if it were three original offenses, the court is not disposed to make any different presumption as to what the local courts could or should have done. In small offenses, such as misdemeanors, accuracy of pleadings is not required, and is not to be expected; but the proper procedure where a prisoner is to be punished more heavily for a second offense than for a first is for the offense in the second case to be set out as a second offense in order to justify an aggravated punishment. Indeed, properly speaking, the prosecution for the second offense as being an aggravated one should be after the prosecution and punishment for a first offense. In other words, the fact of its being a second offense would follow from the judicial ascertainment of the first offense. There being no pleading in the second case to show that the defendant was a second offender, so to speak, that was not an issue in the trial, and could not be proved. Accordingly it was not proved, and it was not a part of the judgment. Bandy v. Hehn, 10 Wyo. 167, 67 Pac. 979, 15 Am. Crim. Rep. 395 (1902); Evans v. State, 150 Ind. 651, 50 N. E. 820 (1898); Hoggett v. State, 101 Miss. 272, 57 So. 812 (1911).

The proper construction of the pleadings in the local court, therefore, would not have justified the imposition of a prison sentence at hard labor.

5. It is to be observed that the punishment denounced by the

statute is to "jail," while an infamous offense is one which is punishable by service in a state prison. The word "jail," as well as the word "prison" are used sometimes in a generic sense; but it would seem the better practice to consider the expression "state prison" as the equivalent of "penitentiary." "State prison" is the one more commonly used in the northern, and "penitentiary" in the southern states, but their meaning is the same. United States v. Smith, 40 Fed. 755, 759; Re Claasen, 140 U. S. 200, 205, 35 L. ed. 409, 411, 11 Sup. Ct. Rep. 735. Imprisonment in a local jail, therefore, is not the equivalent of imprisonment in a state prison, and is not an infamous punishment within the meaning of the constitutional provision requiring a grand jury.

6. A class of cases very similar to the one at bar are those covered by the recent Federal pure food legislation of 1906. These offenses are misdemeanors, and are presented by the district attorney without a grand jury. This has never been questioned, as they seem to be offenses not infamous in their nature. And so as to oleomargarin. McCray v. United States, 195 U. S. 27, 49 L. ed. 78, 24 Sup. Ct. Rep. 769, 1 Ann. Cas. 561. The local legislation as to adulteration of milk is to be construed as in pari materia, at least until some prosecution is attempted for the second offense as such. The offense of which the petitioner was convicted was not an infamous crime within the meaning of the Constitution, and hence did not require presentment or indictment by a grand jury. It follows, therefore, that the petitioner is not restrained of his liberty in violation of Amendment 6 of the Federal Constitution.

7. Even were there any question as to the above reasoning, there would nevertheless be no possibility of granting the writ at

the present time. The infamous features of the punishment, therefore the elements making up the infamous crime, as claimed by the petitioner, are those connected with the second offense, and under no circumstances could the defendant be held to be undergoing punishment for a second offense before he had completed the punishment for the conviction already had for the first offense. The conviction for the first offense must be supposed to begin on May 18, and would last for the term of thirty days. This application is within that time. The prisoner cannot complain of this imprisonment, and the respondent would not be authorized to make a return showing imprisonment of petitioner on the second offense until the term of the second offense had begun. This cannot be until June 18. Whether even then the crime is to be considered as an infamous one will depend upon the other questions above discussed.

8. It is claimed, however, that petitioner was entitled to a trial by a petit jury. He made no claim, formally or informally, for trial by jury, and made no objection to the proceedings or at the judgment on this ground. The fact seems to be that he was tried and convicted on May 18, 1917, as no doubt hundreds of others have been on other dates by the local courts, and only when this court decided on May 21, in the Tapia Case, ante, 452, that the Constitution was applicable to Porto Rico did he come to the determination to claim rights under the Constitution. In other words, he did not know his rights at the time, and therefore did not claim them. This hardly amounts to a waiver, and moreover it has been held that in serious matters at least a jury cannot be waived. Thus, where an offense amounting to a felony was committed when Utah was a territory and was tried after it became a state with laws permitting a jury of less than twelve

men, it was held that the defendant was not bound by a waiver of the constitutional jury of twelve men, and could set up the defect after conviction. Thompson v. Utah, 170 U. S. 343, 353, 42 L. ed. 1061, 1067, 18 Sup. Ct. Rep. 620; Dickinson v. United States, 86 C. C. A. 625, 159. Fed. 801, 811. There can be no consent because the public is affected. Freeman v. United States, 142 C. C. A. 256, 227 Fed. 744; Cooley, Const. Lim. 576.

9. The tendency in modern times is towards dispensing with a jury in minor offenses. This can be done by the states if the particular state Constitution permits; there is no such possibility in regard to courts of the United States and incorporated territories of the United States because of Amendment 6 of the Constitution, requiring a jury, which means a common-law jury of twelve men, "in all criminal prosecutions." Nevertheless a petty offense is not such a "criminal prosecution," for it was not such at common law, and the Constitution was framed with the common law in view. Schick v. United States, 195 U. S. 65, 49 L. ed. 99, 24 Sup. Ct. Rep. 826, 1 Ann. Cas. 585. The difficulty is to find some principle upon which to decide whether an offense is or is not to be considered a "petty offense" within this rule. It will be making a travesty of justice to declare that an ordinary case of disorderly conduct or drunkenness, or other municipal offense, is to be considered as a "criminal prosecution" under the Constitution, and require the expense, delay, and formality of a jury. Callan v. Wilson, 127 U. S. 540, 555, 32 L. ed. 223, 228, 8 Sup. Ct. Rep. 1301. Offenses which in their essence were not such at common law, but are entirely the creature of modern statute, may be tried as may be declared in the modern statute in question. Cooley, Const. Lim. *319. This cannot, however,

be pushed to extremes. If a modern statute denounces an infamous punishment for a new crime, it would not be possible to legislate that it should not be tried by a petit jury. In other words, negatively it would seem clear that if an offense is punishable as an infamous crime the defendant is entitled to an indictment by a grand jury, and that everything subject to indictment by a grand jury must be tried by a petit jury. On the other hand, every case that is tried by a petit jury does not need an indictment by a grand jury.

In other words, a petit jury is not necessarily a part of every court, or of the same court at all times. It is required by the Constitution only in criminal prosecutions which are above the grade of police or other petty offenses. The criminal prosecution of which the prisoner complains was, as carried out, one of this less serious grade.

10. In the case at bar the writ of habeas corpus will not be granted, and petitioner will perform the sentence in accordance with any lawful judgment heretofore entered by the local court. But it would seem proper to define the course of procedure upon such applications after conviction. This court has no desire to cripple the administration of justice in the local courts by throwing any doubt upon their procedure, unless in cases where constitutional rights have been clearly violated. If a writ of habeas corpus is granted, that places the prisoner in the custody of the marshal of this court to be held until it can be decided by this court whether the local imprisonment is constitutional or not. In the nature of the case this cannot always be determined upon the hearing, and it might well be that prisoners who have been properly convicted may apply for a writ with a view to their temporary enlargement on bond. It is possible that this might

Ex parte Araujo.

become a great public inconvenience. This court, therefore, will proceed in the following manner upon application after conviction for habeas corpus for alleged violation of constitutional rights. The hearing of the matter will ordinarily come up on the petition for habeas corpus without issuing any writ or awaiting any return. This will work no inconvenience to the petitioner, inasmuch as he can in this manner make the same showing in regard to matters of law which he could if produced in court; while on the other hand there will not be the necessity for releasing him on bond pending the decision of the application. This practice seems to be called for by the local situation, and will be pursued unless it appears improper on the facts or otherwise in a particular case as presented.

The application for the writ is denied.

It is so ordered.