**C. Merritt WINSBY, Plaintiff,**

v.

**JOHN OSTER MANUFACTURING CO. and Gimbel Brothers, Inc., Defendants.**

**Civ. A. No. 69-171.**

United States District Court,
W. D. Pennsylvania.

Jan. 17, 1972.

**664**

J. N. Poffinberger, Jr., Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiff.

Kim Darragh, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for defendants.

## OPINION

DUMBAULD, District Judge.

Plaintiff in this case did not stipulate to accept, but made timely objection

against, trial of the case by a jury of six, as provided for in a local rule of this Court.

The writer of this opinion voted against adoption of said local rule, upon the ground that prudence dictated awaiting a square holding by the Supreme Court of the United States sustaining the validity of such an innovation in the trial of civil and criminal cases[1] in federal courts, rather than rushing in, for reasons of convenience and expediency, to adopt such a rule on the strength of bar association speeches by the Chief Justice or resolutions of the Judicial Conference. However, this Court adopted said rule, and it was applied in this case, over plaintiff's timely objection.

The existing law regarding juries in federal courts is quite clear in requiring (1) that there must be twelve jurors and (2) that the verdict must be unanimous.[2]

It has long been equally clear that the due process requirements of the Fourteenth Amendment do not forbid use of a jury of less than twelve *in State courts.*[3]

Then in 1968 the Supreme Court held that jury trial in serious criminal cases was so "fundamental to the American scheme of justice" that the Fourteenth Amendment would be considered as requiring jury trial in State courts if it

1. The rule of this Court, as of other courts adopting this innovation, is limited to civil cases. But if the practice is constitutionally valid for civil cases it would be equally valid and desirable in criminal cases also. The Constitution makes no distinction between the two types of cases. Art. III, sec. 2, cl. 3 provides that "The Trial of all Crimes . . . shall be by Jury", and the Sixth Amendment adds that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury [of the place where the offence occurred]." But the Seventh Amendment is equally explicit that in civil cases involving more than twenty dollars, "the right of trial by jury shall be preserved, and no fact tried by a jury

shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

2. Patton v. United States, 281 U.S. 276, 288, 50 S.Ct. 253, 74 L.Ed. 854 (1930). A third requirement is the presence of a superintending judge to instruct the jury concerning the law.

3. Thus while Utah was a federal territory, conviction by a jury of eight was forbidden [Thompson v. Utah, 170 U.S. 343, 349–351, 18 S.Ct. 620, 42 L.Ed. 1061 (1898)]; but permitted after Utah attained statehood. Maxwell v. Dow, 176 U.S. 581, 602–605, 20 S.Ct. 448, 44 L.Ed. 597 (1900)]. See Dumbauld, The Constitution of the United States (1964) 369.

would be required by the Sixth Amendment if tried in a federal court.[4]

This decision carried forward the recent trend towards making federal standards of constitutionality applicable against the States.[5] There has never been a majority on the Court in favor of Justice Black's view that the Fourteenth Amendment "incorporated" *in toto* the federal bill of rights. But more and more specific items have been held binding upon the States. The process has been described as "selective incorporation." [6]

At least two clear thinkers on the Court, Justices Robert H. Jackson and John M. Harlan, have always recognized "the inappropriateness of a single standard for restricting State and Nation" because of the "disparity between their functions and duties."[7]

Because, after all, the only justification for any interference by a federal court with proceedings in a State court must be found in the language of the Fourteenth Amendment, the merits of Justice Harlan's method of analysis is clear. "That is to start with the words 'liberty' and 'due process of law' and attempt to define them in a way that ac-

cords with American traditions and our system of government."[8] In this process the federal "Bill of Rights is evidence, at various points, of the content Americans find in the term 'liberty' and of American standards of fundamental fairness." [9]

By acceptance in *Duncan* of the federal standards of jury trial as applicable against the States, the Supreme Court sort of painted itself into a corner, which became obvious when the question arose in Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), whether, being now bound by federal standards, the States were no longer free to use juries of less than twelve.

It would have been intolerable to require States to employ juries of twelve in all serious criminal cases, when the law had been clear since the nineteenth century that they were not obliged to do so.[10]

The Court therefore took the other horn of the dilemma and held that "federal standards" (as applicable to the States under the Fourteenth Amendment) did not require a jury of twelve.[11]

---

4. Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968).

5. Before adoption of the Fourteenth Amendment, of course, it was clear that the federal Bill of Rights limited the powers of the federal government, but not those of the State governments. Barron, for Use of Tiernan v. Mayor and City Council of Baltimore, 7 Pet. 243, 247, 8 L.Ed. 672 (1833). Indeed, as late as 1922, the Supreme Court took the view that the Fourteenth Amendment did not make even the First Amendment binding on the States. In 1925, however, it ventured the tentative assumption that the "freedom" of speech protected by the First Amendment was included in the "liberty" which the Fourteenth Amendment required the States to respect. Thus began what Charles Warren called "the new liberty." Dumbauld, The Bill of Rights and What It Means Today (1957) 133; Charles Warren, "The New 'Liberty' under the Fourteenth Amendment", 39 Harv.L.R. 431 (1926).

6. Henkin, "Selective Incorporation in the Fourteenth Amendment", 73 Yale L.J. 74 (1963); Dumbauld, The Bill of Rights and What It Means Today (1957) 135.

7. Beauharnais v. Illinois, 343 U.S. 250, 294–295, 72 S.Ct. 725, 750, 96 L.Ed. 919 (1952) [Jackson, J.]; see also Duncan v. Louisiana, 391 U.S. at 172–173, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) [Harlan, J.].

8. 391 U.S. at 176, 88 S.Ct. at 1463.

9. 391 U.S. at 177, 88 S.Ct. at 1464. I would be willing to go further and say that the federal Bill of Rights ordinarily raises a presumption as to what the content is that Americans find in liberty and in their standards of fundamental fairness.

10. See note 3, *supra*.

11. 399 U.S. at 86, 90 S.Ct. 1893. Justice Harlan's dissent pointed out that the holding demonstrated "a constitutional schizophrenia born of the need to cope with national diversity under the constraints of the incorporation doctrine."

While as a result of the *Williams* case the effect of prior cases requiring a jury of twelve in federal criminal cases is unquestionably undermined, yet since *Williams* was in fact a State court case *Williams* is merely an elaborate *dictum* and not a square holding with respect to the rule applicable in federal trials.

Perhaps if the issue were squarely presented in an appropriate adversary proceeding, the Court might find "the monstrous price" paid for the incorporationist doctrine "in which we seem to have imprisoned ourselves" too high. Coolidge v. New Hampshire, 403 U.S. 443, 491, 493, 91 S.Ct. 2022, 2051, 29 L. Ed.2d 564 (1971).

But assuming *arguendo* that *Williams* is to be taken as applicable to federal trials, it remains true, as plaintiff argues, that it merely settles the question whether a jury of twelve is *constitutionally* required by force of the Sixth Amendment.

Justice White's majority opinion in *Williams* makes plain that the decision does not affect the policy considerations which may affect the value of the traditional jury of twelve. "Our holding does no more than leave these considerations to Congress and the States, unrestrained by an interpretation of the Sixth Amendment that would forever dictate the precise number that can constitute a jury."[12]

It is therefore for the Congress, not the inferior federal courts, to resolve these policy considerations for the federal system.

Congress has recently demonstrated its intent to deal with the subject of jury selection by enacting comprehensive legislation, chiefly designed to ensure representation of a broader spectrum or cross-section of the community upon jury panels.[13] Nowhere in this system is there any suggestion that juries of less than twelve were contemplated; and reduction in the number of jurors certainly seems incompatible with the policy of furthering the representation of minority groups upon juries.

Moreover, the jury of less than twelve, as plaintiff well points out, also conflicts with what Congress has prescribed in 28 U.S.C. § 2072 (which authorizes the Supreme Court to adopt federal rules of civil procedure). It is there declared that such rules "shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution."

It will be noted that Congress prescribed two requirements regarding jury trial in federal courts: (1) it must preserve the characteristic features of jury trial at common law; and (2) it must preserve the characteristic features of jury trial as declared by the Seventh Amendment.

The majority opinion in *Williams* expressly concedes that it is a "fact that the jury at common law was composed of precisely 12"; the thrust of its holding is that that fact "is a historical accident." [14]

That opinion likewise expressly refrains from deciding anything with respect to what is required by the Seventh Amendment.[15]

Plaintiff also argues with great plausibility that Rule 48 F.R.Civ.P. by negative pregnant prescribes a jury of twelve for all cases where no contrary stipulation is made by the parties.

399 U.S. at 136, 90 S.Ct. at 1925. Justice Stewart's dissent declared that "the spell of the theory's logic compels the Court either to impose intolerable restrictions upon the constitutional sovereignty of the individual States in the administration of their own criminal law, or else intolerably to relax the explicit restrictions that the Framers actually did put upon the *Federal* Government in the administration of criminal justice". 399 U.S. at 143, 90 S.Ct. at 1928.

12. 399 U.S. at 103, 90 S.Ct. at 1907.

13. Act of March 27, 1968, 82 Stat. 54, 28 U.S.C. § 1861 et seq.

14. 399 U.S. at 102, 90 S.Ct. 1893, 1907. See also 399 U.S. at 91 and 92, 90 S.Ct. 1893, 26 L.Ed.2d 446.

15. 399 U.S. at 92, 90 S.Ct. 1893, 26 L.Ed. 2d 446.

That rule reads: "The parties may stipulate that the jury shall consist of any number less than twelve or that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury."[16]

In any event it would appear more seemly for such a fundamental change in the jury system to be enacted by the Supreme Court with the tacit assent of Congress as an amendment to the Federal Rules of Civil Procedure rather than to be established by the fiat of an individual district court by local rules.

For all of the foregoing reasons we believe plaintiff's point as to trial by a jury of less than twelve is well taken, and therefore, in order to expedite appellate review, deny the motion for new trial.

---

16. There is less substance to the argument that Rule 38 is violated by the new practice. That rule provides: "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." It would be hyperlegalistic to construe this rule as embodying the Seventh Amendment prior to the *Williams* gloss. As to statutes, it would duplicate the argument based on 28 U.S.C. § 2072.