# THOMPSON *v.* UTAH.

ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 553.  Argued March 4, 7, 1898. — Decided April 25, 1898.

The provision in the constitution of the State of Utah, providing for the trial of criminal cases, not capital, in courts of general jurisdiction by a jury composed of eight persons, is *ex post facto* in its application to felonies committed before the Territory became a State.

THE case is stated in the opinion.

*Mr. J. W. N. Whitecotton* for plaintiff in error.

*Mr. L. T. Michener* for defendant in error. *Mr. A. C. Bishop*, *Mr. Benner X. Smith* and *Mr. W. W. Dudley* were on his brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

By an indictment returned in the District Court of the Second Judicial District of the Territory of Utah, at its May term, 1895 — that being a court of general jurisdiction — the plaintiff in error and one Jack Moore were charged with the crime of grand larceny alleged to have been committed March 2, 1895, in Wayne County of that Territory, by unlawfully and feloniously stealing, taking and driving away one calf, the property of Heber Wilson.

. The case was first tried when Utah was a Territory, and by a jury composed of twelve persons. Both of the defendants were found guilty as charged, and were recommended to the mercy of the court. A new trial having been granted, the case was removed for trial to another county. But it was not again tried until after the admission of Utah into the Union as a State.

At the second trial the defendant was found guilty. He moved for a new trial upon the ground among others that the jury that tried him was composed of only eight jurors; whereas by the law in force at the time of the commission of the alleged offence a lawful jury in his case could not be composed of less than twelve jurors. The application for a new trial having been overruled, and the accused having been called for sentence, he renewed his objection to the composition of the jury, and moved by counsel that the verdict be set aside and another trial ordered.

This objection was overruled, the accused duly excepting to the action of the court. He was then sentenced to the state prison for the term of three years. The judgment of conviction was affirmed by the Supreme Court of Utah, the court

holding that the trial of the accused by a jury composed of eight persons was consistent with the Constitution of the United States.

By the statutes of the Territory of Utah in force at the time of the commission of the alleged offence it was provided that a trial jury in a District Court should consist of twelve, and in a justice's court of six, persons, unless the parties to the action or proceeding, in other than criminal cases, agreed upon a less number; that a felony was a crime punishable with death or by imprisonment in the penitentiary, every other crime being a misdemeanor; that the stealing of a calf was grand larceny and punishable by confinement in the penitentiary for not less than one nor more than ten years; that no person should be convicted of a public offence unless by the verdict of a jury, accepted and recorded by the court, or upon a plea of guilty, or upon judgment against him upon a demurrer, or upon the judgment of a court, a jury having been waived in a criminal action not amounting to a felony; and that issues of fact should be tried by jury, unless a trial in that mode was waived in criminal cases not amounting to a felony by the consent of both parties expressed in open court and entered in its minutes. 2 Compiled Laws, Utah, 1888, §§ 3065, 4380, 4643, 4644, 4790, 4997.

By the constitution of the State of Utah it is provided: "In capital cases the right of trial by jury shall remain inviolate. In courts of general jurisdiction, except in capital cases, a jury shall consist of eight jurors. In courts of inferior jurisdiction a jury shall consist of four jurors. In criminal cases the verdict shall be unanimous." Art. I, Sec. 10. Also: "All criminal prosecutions and penal actions which may have arisen or which may arise before the change from a territorial to a state government, and which shall then be pending, shall be prosecuted to judgment and execution in the name of the State, and in the court having jurisdiction thereof. All offences committed against the laws of the Territory of Utah, before the change from a territorial to a state government, and which shall not have been prosecuted before such change, may be prosecuted in the name and by the authority of the State

of Utah, with like effect, as though such change had not taken place, and all penalties incurred shall remain the same, as if this constitution had not been adopted." Art. XXIV, Sec. 6.

As the offence of which the plaintiff in error was convicted was a felony, and as by the law in force when the crime was committed he could not have been tried by a jury of a less number than twelve jurors, the question is presented whether the provision in the constitution of Utah, providing for a jury of eight persons in courts of general jurisdiction, except in capital cases, can be made applicable to a felony committed within the limits of the State while it was a Territory, without bringing that provision into conflict with the clause of the Constitution of the United States prohibiting the passage by any State of an *ex post facto* law.

The Constitution of the United States provides: "The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the State where the said crimes shall have been committed, but when not committed within any State, the trial shall be at such place or places as the Congress may by law have directed." Art. III, Sec. 2. And by the Sixth Amendment of the Constitution it is declared: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."

That the provisions of the Constitution of the United States relating to the right of trial by jury in suits at common law apply to the Territories of the United States is no longer an open question. *Webster* v. *Reid*, 11 How. 437, 460; *American Publishing Co.* v. *Fisher*, 166 U. S. 464, 468; *Springville* v. *Thomas*, 166 U. S. 707. In the last named case it was claimed that the territorial legislature of Utah was empowered by the organic act of the Territory of September 9, 1850, 9 Stat. 453, c. 51, § 6, to provide that una-

nimity of action on the part of jurors in civil cases was not necessary to a valid verdict. This court said: "In our opinion the Seventh Amendment secured unanimity in finding a verdict as an essential feature of trial by jury in common law cases, and the act of Congress could not impart the power to change the constitutional rule, and could not be treated as attempting to do so."

It is equally beyond question that the provisions of the National Constitution relating to trials by jury for crimes and to criminal prosecutions apply to the Territories of the United States.

The judgment of this court in *Reynolds* v. *United States*, 98 U. S. 145, 154, which was a criminal prosecution in the Territory of Utah, assumed that the Sixth Amendment applied to criminal prosecutions in that territory.

In *Callan* v. *Wilson*, 127 U. S. 540, 549, 551, which was a criminal prosecution by information in the Police Court of the District of Columbia, the accused claimed that the right of trial by jury was secured to him by the Third Article of the Constitution as well as by the Fifth and Sixth Amendments. The contention of the Government was that the Constitution did not secure the right of trial by jury to the people of the District of Columbia; that the original provision, that when a crime was not committed within any State " the trial shall be at such place or places as the Congress may by law have directed," had, probably, reference only to offences committed on the high seas; that, in adopting the Sixth Amendment, the people of the States were solicitous about trial by jury in the States and nowhere else, leaving it entirely to Congress to declare in what way persons should be tried who might be accused of crime on the high seas and in the District of Columbia and in places to be thereafter ceded for the purposes respectively of a seat of Government, forts, magazines, arsenals and dockyards; and, consequently, that that Amendment should be deemed to have superseded so much of the Third Article of the Constitution as related to the trial of crimes by jury. That contention was overruled, this court saying: "As the guarantee of a trial by jury, in the Third Article, implied

a trial in that mode and according to the settled rules of the common law, the enumeration, in the Sixth Amendment, of the rights of the accused in criminal prosecutions, is to be taken as a declaration of what those rules were, and is to be referred to the anxiety of the people of the States to have in the supreme law of the land, and so far as the agencies of the General Government were concerned, a full and distinct recognition of those rules, as involving the fundamental rights of life, liberty and property. This recognition was demanded and secured for the benefit of all the people of the United States, as well those permanently or temporarily residing in the District of Columbia, as those residing or being in the several States. There is nothing in the history of the Constitution or of the original amendments to justify the assertion that the people of this District may be lawfully deprived of the benefit of any of the constitutional guarantees of life, liberty and property — especially of the privilege of trial by jury in criminal cases." "We cannot think," the court further said, "that the people of this District have, in that regard, less rights than those accorded to the people of the Territories of the United States."

In *Mormon Church* v. *United States*, 136 U. S. 1, 44, one of the questions considered was the extent of the authority which the United States might exercise over the Territories and their inhabitants. In the opinion of Mr. Justice Bradley reference was made to previous decisions of this court, in one of which, *National Bank* v. *County of Yankton*, 101 U. S. 129, 133, it was said that Congress, in virtue of the sovereignty of the United States, could not only abrogate the laws of the territorial legislatures, but may itself legislate directly for the local government; that it could make a void act of the Territorial legislature valid, and a valid act void; that it had full and complete legislative authority over the people of the territories and all the departments of the territorial governments; that it "may do for the Territories what the people, under the Constitution of the United States, may do for the States." Reference was also made to *Murphy* v. *Ramsey*, 114 U. S. 15, 44, in which it was said: "The people of the United States,

as sovereign owners of the national Territories, have supreme power over them and their inhabitants. In the exercise of this sovereign dominion, they are represented by the Government of the United States, to whom all the powers of government over that subject have been delegated, subject only to such restrictions as are expressed in the Constitution, or are necessarily implied in its terms." The opinion of the court in on Church v. United States then proceeded: "Doubtless Congress, in legislating for the Territories, would be subject to those fundamental limitations in favor of personal rights which are formulated in the Constitution and its amendments; but these limitations would exist rather by inference and the general spirit of the Constitution from which Congress derives all its powers, than by any express and direct application of its provisions. The supreme power of Congress over the Territories and over the acts of the territorial legislatures established therein, is generally expressly reserved in the organic acts establishing governments in said Territories. This is true of the Territory of Utah. In the sixth section of the act establishing a territorial government in Utah, approved September 9, 1850, it is declared 'that the legislative powers of said Territory shall extend to all rightful subjects of legislation, consistent with the Constitution of the United States and the provisions of this act. . . . All the laws passed by the legislative assembly and governor shall be submitted to the Congress of the United States, and if disapproved shall be null and of no effect.' 9 Stat. 454."

Assuming then that the provisions of the Constitution relating to trials for crimes and to criminal prosecutions apply to the Territories of the United States, the next inquiry is whether the jury referred to in the original Constitution and in the Sixth Amendment is a jury constituted, as it was at common law, of twelve persons, neither more nor less. 2 Hale's P. C. 161; 1 Chitty's Cr. Law, 505. This question must be answered in the affirmative. When Magna Charta declared that no freeman should be deprived of life, etc., "but by the judgment of his peers or by the law of the land," it referred to a trial by twelve jurors. Those who emigrated to this

country from England brought with them this great privilege " as their birthright and inheritance, as a part of that admirable common law which had fenced around and interposed barriers on every side against the approaches of arbitrary power." 2 Story's Const. § 1779. In Bacon's Abridgment, Title Juries, it is said : " The trial *per pais*, or by a jury of one's country, is justly esteemed one of the principal excellencies of our Constitution ; for what greater security can any person have in his life, liberty or estate, than to be sure of not being divested of, or injured in any of these, without the sense and verdict of twelve honest and impartial men of his neighborhood ? And hence we find the common law herein confirmed by Magna Charta." So, in 1 Hale's P. C. 33 : " The law of England hath afforded the best method of trial, that is possible, of this and all other matters of fact, namely, by a jury of twelve men all concurring in the same judgment, by the testimony of witnesses *viva voce* in the presence of the judge and jury, and by the inspection and direction of the judge." It must consequently be taken that the word " jury " and the words " trial by jury " were placed in the Constitution of the United States with reference to the meaning affixed to them in the law as it was in this country and in England at the time of the adoption of that instrument; and that when Thompson committed the offence of grand larceny in the Territory of Utah — which was under the complete jurisdiction of the United States for all purposes of government and legislation — the supreme law of the land required that he should be tried by a jury composed of not less than twelve persons. And such was the requirement of the statutes of Utah while it was a Territory.

Was it then competent for the State of Utah, upon its admission into the Union, to do in respect of Thompson's crime what the United States could not have done while Utah was a Territory, namely, to provide for his trial by a jury of eight persons ?

We are of opinion that the State did not acquire upon its admission into the Union the power to provide, in respect of felonies committed within its limits while it was a Territory,

that they should be tried otherwise than by a jury such as is provided by the Constitution of the United States. When Thompson's crime was committed, it was his constitutional right to demand that his liberty should not be taken from him except by the joint action of the court and the unanimous verdict of a jury of twelve persons. To hold that a State could deprive him of his liberty by the concurrent action of a court and eight jurors, would recognize the power of the State not only to do what the United States in respect of Thompson's crime could not, at any time, have done by legislation, but to take from the accused a substantial right belonging to him when the offence was committed.

It is not necessary to review the numerous cases in which the courts have determined whether particular statutes come within the constitutional prohibition of *ex post facto* laws. It is sufficient now to say that a statute belongs to that class which by its necessary operation and " in its relation to the offence, or its consequences, alters the situation of the accused to his disadvantage." *United States* v. *Hall,* 2 Wash. C. C. 366 ; *Kring* v. *Missouri,* 107 U. S. 221, 228 ; *Medley, Petitioner,* 134 U. S. 160, 171. Of course, a statute is not of that class unless it materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offence was committed. And, therefore, it is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offence charged against him. Cooley in his Treatise on Constitutional Limitations, after referring to some of the adjudged cases relating to *ex post facto* laws, says : " But so far as mere modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts in ex-

istence when its facts arose.   The legislature may abolish
courts and create new ones, and it may prescribe altogether
different modes of procedure in its discretion, though it can-
not lawfully, we think, in so doing, dispense with any of those
substantial protections with which the existing law surrounds
the person accused of crime."   c. 9, 6th ed. p. 326.   And
this view was substantially approved by this court in *Kring* v.
*Missouri*, above cited.   So, in *Hopt* v. *Utah*, 110 U. S. 574,
590, it was said that no one had a vested right in mere modes
of procedure, and that it was for the State, upon grounds of
public policy, to regulate procedure at its pleasure.   This
court, in *Duncan* v. *Missouri*, 152 U. S. 377, 382, said that
statutes regulating procedure, if they leave untouched all the
substantial protections with which existing law surrounds the
person accused of crime, are not within the constitutional
inhibition of *ex post facto* laws.   But it was held in *Hopt* v.
*Utah*, above cited, that a statute that takes from the accused
a substantial right given to him by the law in force at the
time to which his guilt relates would be *ex post facto* in
its nature and operation, and that legislation of that kind can-
not be sustained simply because, in a general sense, it may be
said to regulate procedure.   The difficulty is not so much as
to the soundness of the general rule that an accused has no
vested right in particular modes of procedure, as in deter-
mining whether particular statutes by their operation take
from an accused any right that was regarded, at the time of
the adoption of the Constitution, as vital for the protection of
life and liberty, and which he enjoyed at the time of the com-
mission of the offence charged against him.

Now, Thompson's crime, when committed, was punishable
by the Territory of Utah proceeding in all its legislation under
the sanction of and in subordination to the authority of the
United States.   The court below substituted, as a basis of
judgment and sentence to imprisonment in the penitentiary,
the unanimous verdict of eight jurors in place of a unanimous
verdict of twelve.   It cannot therefore be said that the con-
stitution of Utah, when applied to *Thompson's case*, did not
deprive him of a substantial right involved in his liberty, and

did not materially alter the situation to his disadvantage. If, in respect to felonies committed in Utah while it was a Territory, it was competent for the State to prescribe a jury of eight persons, it could just as well have prescribed a jury of four or two, and, perhaps, have dispensed altogether with a jury, and provided for a trial before a single judge.

The Supreme Court of Utah held that this case came within the principles announced by it in *State* v *Bates,* 14 Utah, 293, 301. In the latter case no reference was made to the *ex post facto* clause of the Constitution of the United States. But it was held that the requirement of eight jurors in courts of general jurisdiction, except in capital cases, was not in conflict with the Sixth Amendment of the Constitution of the United States — the court saying that " if a jury of eight men is as likely to ascertain the truth as twelve, that number secures the end," and that " there can be no magic in the number twelve, though hallowed by time." But the wise men who framed the Constitution of the United States and the people who approved it were of opinion that life and liberty, when involved in criminal prosecutions, would not be adequately secured except through the unanimous verdict of twelve jurors. It was not for the State, in respect of a crime committed within its limits while it was a Territory, to dispense with that guarantee simply because its people had reached the conclusion that the truth could be as well ascertained, and the liberty of an accused be as well guarded, by eight as by twelve jurors in a criminal case.

It is said that the accused did not object, until after verdict, to a trial jury composed of eight persons, and therefore he should not be heard to say that his trial by such a jury was in violation of his constitutional rights. It is sufficient to say that it was not in the power of one accused of felony, by consent expressly given or by his silence, to authorize a jury of only eight persons to pass upon the question of his guilt. The law in force, when this crime was committed, did not permit any tribunal to deprive him of his liberty, except one constituted of a court and a jury of twelve persons. In the case of *Hopt* v. *Utah,* above cited, the question arose whether

the right of an accused, charged with felony, to be present before triers of challenges to jurors was waived by his failure to object to their retirement from the court room, or to their trial of the several challenges in his absence.   The court said : " We are of opinion that it was not within the power of the accused or his counsel to dispense with the statutory require- ment as to his personal presence at the trial.   The argument to the contrary necessarily proceeds upon the ground that he alone is concerned as to the mode by which he may be de- prived of his life or liberty, and that the chief object of the prosecution is to punish him for the crime charged.   But this is a mistaken view as well of the relations which the accused holds to the public as of the end of human punishment.   The natural life, says Blackstone, cannot legally be disposed of or destroyed by any individual, neither by the person himself, nor by any other of his fellow creatures, merely upon their own authority.   1 Bl. Com. 133.   The public has an interest in his life and liberty.   Neither can be lawfully taken except in the mode prescribed by law.   That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods.   The great end of punishment is not the expiation or atonement of the offence committed, but the prevention of future offences of the same kind.   4 Bl. Com. 11.   Such being the relation which the citizen holds to the public, and the object of punish- ment for public wrongs, the legislature has deemed it essential to the protection of one whose life or liberty is involved in a prosecution for felony, that he shall be personally present at the trial; that is, at every stage of the trial when his substan- tial rights may be affected by the proceedings against him. If he be deprived of his life or liberty without being so present, such deprivation would be without that due process of law required by the Constitution."

If one under trial for a felony the punishment of which is confinement in a penitentiary could not legally consent that the trial proceed in his absence, still less could he assent to be

deprived of his liberty by a tribunal not authorized by law to determine his guilt.

In our opinion, the provision in the constitution of Utah providing for the trial in courts of general jurisdiction of criminal cases, not capital, by a jury composed of eight persons, is *ex post facto* in its application to felonies committed before the Territory became a State, because, in respect of such crimes, the Constitution of the United States gave the accused, at the time of the commission of his offence, the right to be tried by a jury of twelve persons, and made it impossible to deprive him of his liberty except by the unanimous verdict of such a jury.

*The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE BREWER and MR. JUSTICE PECKHAM dissented.