**UNITED STATES of America**

v.

**Douglas G. KOWAL.**

**Crim. No. H–84–1 (PCD).**

United States District Court,
D. Connecticut.

Oct. 26, 1984.

Peter D. Clark, Thomas F. McCarthy, Crim. Div., Fraud Section, Washington, D.C., for plaintiff.

Maxwell Heiman, Furey, Donovan & Heiman, Bristol, Conn., for defendant.

RULING ON GOVERNMENT'S MOTION TO REQUIRE DEFENDANT'S COMPLIANCE WITH THE INSANITY DEFENSE REFORM ACT OF 1984

DORSEY, District Judge.

The government has moved that the court require that defendant's duly-noticed

insanity defense comport with the requirements of the Insanity Defense Reform Act of 1984 (Act) signed into law by the President on October 12, 1984. While the Act is in effect, its revised and curtailed grounds of insanity and reallocation of the burden of proof to the defendant may not be applied to defendant's trial. As the offenses charged were allegedly committed by defendant before the effective date of the legislation, application of the Act in these respects is prohibited by the *ex post facto* clause of the Constitution.

*Facts*

Defendant is charged with two counts of traveling in interstate commerce with intent to further an unlawful activity, in violation of 18 U.S.C. § 1952. The indictment, returned on January 12, 1984, charges that on or about December 6, 1982, and again on or about June 16, 1983, with intent to further an attempted extortion and an extortion of money from his former employer and principal, in violation of the law of the State of New York, the defendant traveled in interstate commerce and thereafter performed and attempted to perform the unlawful activity of extortion.

Originally scheduled to commence on May 22, 1984, trial was aborted by reason of defendant's then incompetence, since alleviated, and then continued for psychiatric testing and evaluation. On July 31, 1984, defendant filed notice of his reliance on the defense of insanity. Fed.R.Crim.P. 12.2(a). Trial is presently scheduled for October 29, 1984.

On October 12, 1984, the President signed the Comprehensive Crime Control Act of 1984, of which Sections 401 through 406 constitute a sweeping overhaul of the nature and presentation of the insanity defense in the federal courts.

■ Aimed at redressing "a glaring deficiency in our federal criminal justice system—the abuse of the insanity defense," 130 Cong.Rec. 13, H 381 (daily ed. 2/8/83) (Statement of Rep. Gekas), the Act is a multi-pronged attack on "a long-developing problem that we have permitted to confuse and misguide that [sic] fact finding process

of criminal trials." *Id.* The Act substantially changes: the definition of insanity; the allocation of the burden of proof; the limits of expert testimony; the forms of verdict; and procedures for disposition of the mentally ill offender. The present motion provides a sufficiently clear record to consider the applicability of two principal provisions of the Act, the revised definition of insanity and the allocation of the burden of proving insanity.

Section 402 of the Act provides as follows:

(a) AFFIRMATIVE DEFENSE.—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

(b) BURDEN OF PROOF.—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

Absent another provision, the Act is effective as of the signature of the President to the Law. 2 Sutherland's Statutory Construction § 33.06 (3d ed. Sands Rev.1973), citing *Gardner v. Collector,* 6 Wall 499, 18 L.Ed. 890 (1867).

*Discussion*

A.

■ Article I, § 9, clause 3 and Article I, § 10, clause 1 of the Constitution prohibit the enactment by Congress of *ex post facto* legislation. In *Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1976), after observing that the Supreme Court's "cases have not attempted to precisely delimit the scope of this Latin phrase, but have instead given it substance by an accretion of case law," the Court summarized the characteristics of an *ex post facto* law as set forth in *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925):

It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*

Among the purposes of the prohibition are to "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed" and to restrain "arbitrary and potentially vindictive legislation." *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 963–964, 67 L.Ed.2d 17 (1980) (citations omitted).

In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.

\* \* \* \* \* \*

We have also held that no *ex post facto* violation occurs if the change effected is merely procedural, and does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Hopt v. Utah,* 110 U.S. 574, 590 [4 S.Ct. 202, 210, 28 L.Ed. 262] (1884). See *Dobbert v. Florida,* 432 U.S. 282, 293 [97 S.Ct. 2290, 2298, 53 L.Ed.2d 344] (1977). Alteration of a substantial right, however, is not merely procedural, even if the statute takes a seemingly procedural form. *Thompson v. Utah,* 170 U.S. 343, 354–355 [18 S.Ct. 620, 624, 42 L.Ed. 1061] (1898); *Kring v. Missouri, supra* [17 Otto 221] at 232 [2 S.Ct. 443 at 452, 27 L.Ed. 506].

*Weaver,* 450 U.S. at 29 & n. 12, 101 S.Ct. at 964 n. 12 (citations omitted).

Perhaps due to difficulties inherent in applying the *ex post facto* prohibition to retroactive procedural changes lightening the prosecutorial burden, Supreme Court jurisprudence in this regard is not all of one piece. *Compare, e.g., Kring v. Missouri,* 17 Otto 221, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883) (invalidating retrospective abrogation of state rule treating conviction for lesser included offense as acquittal of greater offense) and *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898) (invalidating retrospective application of state law requiring only eight jurors rather than twelve) *with, e.g., Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (validating retrospective enlargement of class of competent witnesses); *Duncan v. Missouri,* 152 U.S. 377, 14 S.Ct. 570, 38 L.Ed. 485 (1894) (validating retrospective reduction in number of judges hearing appeals); *Gibson v. Mississippi,* 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896) (validating retrospective change in mode of grand jury selection); *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (validating retrospective broadening of mode of authenticating and introducing handwriting samples): *Mallett v. North Carolina,* 181 U.S. 589, 21 S.Ct. 730, 45 L.Ed. 1015 (1901) (validating retrospective granting of right of appeal by the state): *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (validating retrospective limitation on right of jointly-indicted defendants to receive separate trials). *See also Murphy v. Kentucky,* —— U.S. ——, 104 S.Ct. 1427, 1428, 79 L.Ed.2d 751 (1984) (White, J. dissenting from denial of writ of certiorari where case provided opportunity to address "the evident confusion among lower courts concerning the application of the *Ex Post Facto* clause to changes in the rules of evidence and procedure").

While it has been suggested that the cases validating retroactive procedural changes "can hardly be distinguished in any functional way from those invalidated," L. Tribe, American Constitutional Law § 70–3 at 483–84 (1978), the *Beazell* Court suggests the cases trace an evolution

toward the following distinction, concededly one of degree rather than kind:

> [S]tatutory changes in the mode of trial or the rules of evidence, *which do not deprive the accused of a defense* and which operate only in a limited and unsubstantial way to his disadvantage are not prohibited ... [whereas] ... *procedural changes which operate to deny to the accused a defense available under the laws in force at the time of the commission of his offense,* or which otherwise affect him in ... a harsh and arbitrary manner ... fall within the constitutional prohibition.

269 U.S. at 170–71, 46 S.Ct. at 68–69 (citations omitted) (emphasis added).

### B.

The standard for criminal responsibility first promulgated by the American Law Institute (ALI) and incorporated into the Model Penal Code has, during the last two decades, come to supplant the once dominant common law *McNaughten* test.

The ALI standard, approved for use in nearly all federal courts, was adopted in this circuit as follows: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity *either* to appreciate the wrongfulness of his conduct *or* to conform his conduct to the requirements of the law." *United States v. Freeman,* 357 F.2d 606, 622 (2d Cir.1966) (emphasis added). The ALI standard thus has a cognitive and a volitional prong.

The Act narrows the definition of insanity and includes only the inability to appreciate the nature and quality or the wrongfulness of his acts. The inability, as a result of a mental disease or defect, to conform one's conduct to the requirements of the law has thus been eliminated.

Under the ALI standard, a finding that defendant met either the cognitive or volitional test would result in an acquittal. The Act, premised on the view "that it is impossible with any degree of fairness or accuracy to determine whether a defendant acted because he chose to or because he was driven by uncontrollable psychological forces," and that maintenance of the volitional prong of the test "merely perpetuates an inviting arbitrary loophole for those with the resources to avail themselves of it," (130 Cong.Rec. 13) sanctions only a unitary, cognitive standard.

The adoption, in *Freeman,* of the ALI standard (and its retroactive effect to cases pending on appeal) changed the legal definition of insanity in a manner noted to be substantive in nature. *United States v. Tarrago,* 398 F.2d 621, 623 (2d Cir.1968). The change effectuated by the Act is likewise substantive. Retrospective application of the Act's standard to this defendant would deprive him of one prong of the ALI insanity defense to wit, that at the time of his conduct, as a result of mental disease or defect, he lacked substantial capacity to conform his conduct to the requirements of the law. As the Act, if applied, would deprive one charged with crime of a defense available at the time when the act was committed, it cannot be so applied in the face of the *ex post facto* clause. *Beazell,* 269 U.S. at 169–70, 46 S.Ct. at 68–69.

### C.

The Act's changes with respect to the burden of proof of the insanity defense if imposed on defendant would also violate the *ex post facto* clause. Under prior federal law, the government has borne the ultimate burden of persuasion on the issue of insanity. Once a federal defendant notified the government of his intention to rely upon the insanity defense, Fed.R.Crim.P. 12.2(a), and introduced some evidence of insanity, it was incumbent on the government to prove defendant's sanity beyond a reasonable doubt. That burden has been criticized as "entirely inappropriate since it is the defendant who possesses the secrets of his own mind and it is he who claims that these mysterious impulses were responsible for his conduct. It is not excessive to place the burden on the defendant to show that which he best knows." 130 Cong.Rec. 13.

Prior to the Act, evidence short of proof of sanity beyond a reasonable doubt would entitle defendant to an acquittal. The Act, by allocating the burden of proof to defendant, results in an acquittal by reason of insanity only if insanity is proven clearly and convincingly.

There is a substantial middle ground or "grey area" between government proof of sanity (beyond a reasonable doubt) and clear and convincing proof of insanity. Prior to the Act, if the evidence raised a reasonable doubt as to defendant's sanity or showed him to be possibly insane, he should be acquitted. Under the Act, the same state of the evidence, where his sanity is in doubt or he is possibly but not clearly and convincingly insane, i.e. in the same middle ground, he would not be entitled to an acquittal. The Act thus denies a defendant acquittal if he falls in the middle ground or grey area whereas the pre-Act law would require acquittal in such circumstances.

Application of the newly-enacted burden to this defendant thus runs afoul of the *ex post facto* prohibition. Whether viewed as in effect an alteration of a substantial right, while taking a seemingly procedural form, *see Thompson, Kring,* or as a procedural change which operates to modify the quantum and kind of proof required to establish guilt or otherwise affects the defendant in a harsh or arbitrary manner, *see Beazell* at 170–71, 46 S.Ct. at 68–69, this defendant cannot constitutionally be required to assume the burden of proving insanity. While "a defendant may not demand that he be tried in all respects under the law as it existed when he committed the offense ... [h]e may demand trial under prior law ... when changes in the law are substantially to his disadvantage." 2 Sutherland's Statutory Construction § 42.-06 (3d ed. Sands rev.).

The legal definition of insanity and the burden of proving insanity established and assigned by the Insanity Defense Reform Act of 1984 may not, constitutionally, be applied to this defendant by reason of the *ex post facto* prohibition. Defendant's trial shall proceed in accordance with the legal definition and burden of proof with respect to insanity in effect at the time of the conduct alleged in the indictment.

SO ORDERED.