Nancy Holley, Asst. U.S. Atty., Houston, Tex., for the government.

Marjorie Meyers, Asst. Federal Public Defender, Houston, Tex., for defendant.

**UNITED STATES of America**

**v.**

**Eranier Diana LAKEY.**

**Crim. No. H–84–138.**

United States District Court,
S.D. Texas,
Houston Division.

June 5, 1985.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL O. BUE, Jr., District Judge.

The defendant was charged in an eighty-six count indictment with forty-three counts of filing false claims for income tax refunds, in violation of 18 U.S.C. § 287 (1982), and forty-three counts of making false statements to a government agency, in violation of 18 U.S.C. § 1001 (1982). The defendant was tried before the Court without a jury, upon execution of a proper waiver of a jury trial.

Having heard the testmimony, and having reviewed the documentary evidence, the Court finds Ms. Lakey not guilty of all eighty-six counts of the indictment under the applicable law of legal insanity.

*Findings of Fact*

1. The following Findings of Fact are based in part on conflicting testimony, and the Court in making these findings, has assessed the credibility and demeanor of the witnesses and the inherent probabilities and inconsistencies in the testimony received in evidence. The Court's resolution of such credibility issues is determinable, where not specifically stated, from the facts found.

2. The defendant is Eranier Diana Lakey.

3. Ms. Lakey resided at 5611 Grace Point Lane, Houston, Texas, during the period of the alleged offenses.

4. From on or about February 10, 1982 until on or about April 10, 1982, the defendant, Eranier Diana Lakey, filed forty-three claims for income tax refunds with the Internal Revenue Service, (Government's Exhibits 1–43), in violation of 18 U.S.C. § 287. Attached thereto were forty-three W–2 Wage and Tax Statements, (Government's Exhibits 1–43), in violation of 18 U.S.C. § 1001.

5. Each income tax claim reflected the address of defendant, the same amount of earned income ($19,000.00) for 1981, the identical amount of federal taxes withheld, ($8,781.04), as well as the same amount of refund ($5,312.04). Moreover, the names and social security numbers listed on each return were variations of Ms. Lakey's own name and social security number. Government's Exhibits 1–43.

6. Each W–2 Wage and Tax Statement indicated Sharpview Nursing Home as the employer for 1981. The various names on each income tax claim corresponded with the name on the W–2 form. Government's Exhibits 1–43.

7. Ms. Lakey was not employed by Sharpview Nursing Home during 1981. Moreover, none of the taxpayers listed on the W–2 forms which were attached to the income tax claims were employed by Sharpview Nursing Home during 1981. Government's Exhibit 78.

8. Ms. Lakey typed the W–2 forms and attached each form to the forty-three claims presented to the Internal Revenue Service. Testimony of Jack Calvert.

9. The defendant, Eranier Lakey, willfully presented forty-three false claims to the Internal Revenue Service, an agency of the United States, knowing the claims were false, in violation of 18 U.S.C. § 287 and 2.

10. The defendant, Eranier Lakey, willfully and knowingly filed forty-three false W–2 forms with the Internal Revenue Service, an agency of the United States, in violation of 18 U.S.C. § 1001 and 2. The statements contained in the W–2 forms were material.

11. Ms. Lakey was diagnosed as suffering from chronic paranoid schizophrenia. Defendant's Exhibits 7, 8; Government's Exhibits 81, 82, 84; testimony of Dr. Milton Altschuler; testimony of Dr. Sallye Webster; testimony of Dr. Jerome Brown; testimony of Dr. John Nottingham.

12. Chronic schizophrenia can be controlled with medication if taken as prescribed. Testimony of Dr. Altschuler.

13. The "active" phase of schizophrenia, when the symptoms of the disease are at its height, is classified as an acute phase. The onset of an acute attack of schizophrenia can occur at any given time. Testimony of Dr. Altschuler.

14. Ms. Lakey was not taking her medication at regular intervals as prescribed during the time frame charged in the indictment. Testimony of Mrs. Green; testimony of Eranier Lakey; testimony of Sally Fisher.

15. Ms. Lakey exhibited signs of entering an acute phase during the month of March, 1982. Defendants' Exhibit 1, Government's Exhibit 74; testimony of Dr. Altschuler; testimony of Mary Thompson.

16. Defendant's intellectual capacity and ability to correctly calculate income tax forms did not have any correlation with the onset of an acute schizophrenia attack. Testimony of Dr. Altschuler.

17. Defendant had substantial capacity at the time of the acts charged in the

indictment to appreciate the wrongfulness of her conduct. Testimony of defendant; testimony of Dr. Nottingham; testimony of Dr. Brown; testimony of Dr. Webster; testimony of Dr. Altschuler; testimony of Mary Thompson.

18. Defendant did not have substantial capacity, as a result of a mental disease or defect, at the time of the acts charged in the indictment, to conform her conduct to the requirements of law. Testimony of Dr. Altschuler.

### Conclusions of Law

1. Eranier Lakey was charged in an eighty-six count indictment. In counts one through forty-three, the defendant was charged with violation of 18 U.S.C. § 287 and 18 U.S.C. § 2 (1982), and in counts forty-four through eighty-six the defendant was charged with violation of 18 U.S.C. § 1001 and 18 U.S.C. § 2 (1982).

2. In order to establish a violation of 18 U.S.C. § 287, the government must prove beyond a reasonable doubt (a) that Eranier Lakey willfully presented a claim to an agency of the United States; (b) that the claim was false, fraudulent and, (c) that Eranier Lakey knew the claim was false.

3. Moreover, in order to establish a violation of 18 U.S.C. § 1001 the government must prove beyond a reasonable doubt: (a) that the defendant made a false statement, or made use of a false document; (b) that such false statement or false document related to a material matter within the jurisdiction of an agency of the United States; (c) that the defendant acted willfully and knowingly.

4. Defendant maintains that she was legally insane at the time of the charged offense.

5. At the outset, this Court must determine the applicable legal standard for insanity. Until April, 1984, the law in this Circuit with regard to insanity was outlined in *Blake v. United States*, 407 F.2d 908 (5th Cir.1969) (en banc). Essentially, the "test" for insanity consisted of a cognitive and volitional prong; that is, a person would not be criminally responsible for his/her acts if "at the time of the conduct and as a result of mental disease or defect, [she] lacked substantial capacity either to appreciate the wrongfulness of [her] conduct or to conform [her] conduct to the requirements of the law." *Id.*, at 916. On April 16, 1984, the Circuit Court decided *United States v. Lyons*, 731 F.2d 243 (5th Cir.1984) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 323, 83 L.Ed.2d 260 (1984). In that opinion the Court left the burden of proof intact, but eliminated the volitional prong of the *Blake* test. In other words, a person could no longer claim insanity based on the allegation that he/she lacked substantial capacity to conform his/her conduct to the law. Now, the standard employed by the Fifth Circuit as grounds for insanity is "if at the time of that conduct, as a result of a mental disease or defect, he is unable to appreciate the wrongfulness of that conduct." *Lyons*, 731 F.2d at 248.

On October 12, 1984, the Comprehensive Crime Control Act of 1984 was passed which contained the Insanity Defense Reform Act of 1984. The Act narrowed the definition of insanity by eliminating the volitional prong of the insanity defense. Moreover, the Act altered the allocation of burden of proof. Now, the burden of proof is on the defendant to prove by clear and convincing evidence that a severe mental disease or defect resulted in the defendant's inability to appreciate the nature and quality or the wrongfulness of [his/her] acts.

■ Defendant argues that the application of either the standard announced in the Insanity Defense Reform Act of 1984, or the *Lyons* standard would be violative of the *ex post facto* clause of the United States Constitution. This Court agrees. *See United States v. Kowal*, 596 F.Supp. 375 (D.C.Conn.1984).

An *ex post facto* law is one which "punishes as a crime an act previously committed, which was innocent when done; ... or which deprives one charged with crime of any defense available ... *at the time when the act was committed ...*" *Beazell v.*

*Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (emphasis added). The government contends that any change is merely procedural and is, therefore, not violative of the *ex post facto* clause. This Court does not agree. The standards as set forth in *Lyons* and the Insanity Defense Reform Act of 1984 would be violative of the *ex post facto* clause found in Article I, § 9, Clause 3, and Article I, § 10, Clause 1 of the U.S. Constitution. The newly created standards would deprive Ms. Lakey of a defense available according to the law in 1982.[1]

Moreover, even though the change effected may appear procedural, "[A]lteration of a substantial right ... is not merely procedural, even if the statute takes a seemingly procedural form." *Kowal,* 596 F.Supp. at 377, *citing, Thompson v. Utah,* 170 U.S. 343, 354–355, 18 S.Ct. 620, 624, 42 L.Ed. 1061 (1898). The District Court in *Kowal* further noted the apparent difficulties in applying the *ex post facto* clause to retroactive procedural changes that occur when the burden of proof is lightened or shifted. *Id.*[2]

While this Court recognizes the *Lyons* standard as the new test for insanity in this Circuit, this Court is compelled to distinguish the present case from the *Lyons* precedent,[3] particularly in light of the *ex post facto* argument raised by defense.[4]

■ In conclusion, this Court determines that, due to *ex post facto* considerations, this Court must apply the standard outlined in *Blake.* Therefore, while the government proved beyond a reasonable doubt that Ms. Lakey was able to appreciate right from wrong (Finding 17), this Court determined that the government failed to meet its burden of proof on the volitional prong (Finding 18). In other words, by reason of insanity, Ms. Lakey lacked substantial capacity to conform her conduct to the law.

Defendant suffers from chronic paranoid schizophrenia, with lapses into the acute phase. Finding 13. The lapses into the acute phase occurred when defendant was not taking her medication as prescribed. During the relevant periods charged in the indictment, defendant was not taking her medication as prescribed. Finding 14. As a result, Ms. Lakey began entering an acute phase of her disease.[5] This conclu-

---

1. While the Fifth Circuit applied the *Lyons* standard retroactively, there is no indication that an *ex post facto* consideration was briefed or reviewed by the Circuit or the Supreme Court. As to the issue of retroactive application, the Circuit stated, "It would be unfair, however, to remit him retroactively to our newly restricted insanity defense without allowing him the opportunity to plan a defense bearing its contours in mind.... As for other cases, today's holding shall have prospective application." *Lyons,* 731 F.2d at 250.

2. The Fifth Circuit in *Lyons* did not alter the burden of proof.

3. Moreover, this Court agrees with the dissenting judge in *Lyons.* As Judge Johnson noted, "the timing of this action seems particularly inappropriate." *Lyons,* 731 F.2d at 255.

4. This Court notes the policy considerations outlined in the *Handbook on the Comprehensive Crime Control Act of 1984 and Other Criminal Statutes Enacted by the 98th Congress* provided by the Department of Justice. In that handbook, the Department specifically addresses *Lyons* and states that the new statutory standard and burden of proof are not applicable for offenses occurring prior to October 12, 1984. However, in cases where the defendant presents a clear danger of serious violence and where there exists a likelihood of acquittal under the two-prong *Blake* test but a likelihood of conviction under the *Lyons* test, then the government could argue that the *Lyons* test should apply. While this Court does not give the policy handbook any credence as to the applicable legal standards of insanity, it is interesting to note that in this case the government would fail to meet the first prong of the handbook test; that is, clear danger of serious violence. While the evidence shows that defendant has had episodes of violence, it is evident that her violent periods can be controlled with medication. Moreover, testimony elicited indicates that defendant is currently taking her medication on a regular basis.

5. Moreover, while defendant was able to calculate the tax returns accurately and was assessed as an intelligent person, these factors did not reflect whether or not the mental disease was in an acute phase. Finding 16. In other words, a person could be suffering from an acute phase and still be able to perform mathematical computations.

sion was based on exhibition of symptoms, such as agitation, which were consistent with a pattern of the defendant's past occurrences of acute paranoid schizophrenia.[6]

Accordingly, this Court concludes that Ms. Lakey was legally insane at the time of the offenses and is, therefore, not guilty of the charges as alleged in the indictment.

It is so ORDERED.

**6.** While testimony elicited from Dr. Shamsi, Dr. Nottingham, and Dr. Brown indicated Ms. Lakey was not entering an acute phase, this Court notes that Dr. Shamsi did not have any significant contact with defendant other than in a medication group. To the contrary, Ms. Mary Thompson saw Eranier Lakey on a regular basis and was confided in by Ms. Lakey. The defendant was hesitant to talk with Dr. Shamsi, and essentially "told him what he wanted to hear" in an effort to avoid hospitalization.

Moreover, Drs. Nottingham and Brown based their opinion on Dr. Shamsi's reports, as opposed to Drs. Webster and Altschuler who based their reports on Ms. Thompson's reporting. Therefore, this Court concludes that the defense experts under the circumstances, are more credible than the government's experts.