# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                           )
         v.            )    I.D. No. 1607016381
                           )
MARTIN TAYLOR,         )
                           )
      Defendant.    )

Submitted: September 7, 2021
Decided: September 29, 2021

*Upon Consideration of Defendant's Motion in Limine*.
**GRANTED.**

**MEMORANDUM OPINION**

Andrew J. Vella, Esquire, and Eric H. Zubrow, Esquire, DEPARTMENT OF JUSTICE, Wilmington, Delaware. *Attorneys for the State of Delaware*.

Patrick J. Collins, Esquire, COLLINS & ASSOCIATES, Wilmington, Delaware. *Attorney for Defendant Martin Taylor*.

**BUTLER, R.J.**

We have here a Defendant who seeks a ruling *in limine* concerning the availability of a defense which, he fears, the State will argue has been eliminated recently. His fears were realized when the State did indeed file its opposition to Defendant's motion. It now falls on the Court to sort all this out.

## BACKGROUND

Mr. Taylor was accused of murder in 2016. His case was assigned to defense counsel, who negotiated a plea agreement with the State. The Defendant, with considerable ambivalence, entered a plea of Guilty but Mentally Ill to Manslaughter and Possession of a Weapon During Commission of a Felony. At sentencing, the plea netted him a 45-year jail sentence.

Mr. Taylor appealed his convictions to the Delaware Supreme Court, which ruled that he should have been permitted to withdraw his plea before sentencing.[1] On remand, new counsel for Mr. Taylor was duly appointed.

During the interim, the Delaware General Assembly passed an amendment to the law concerning use of force as justification.[2] Specifically, the old law – in effect at the time of the murder – permitted the defendant the use of force so long as the defendant believed the use of force was necessary.[3] The amendment, passed in June,

---

[1] *See generally Taylor v. State*, 213 A.3d 560 (Del. 2019).
[2] 11 *Del. C.* § 464 (a)–(c) (2021) (amending 11 *Del. C.* § 464 (1972) (amended on other grounds 1995)) (hereinafter the "2021 Act").
[3] 11 *Del. C.* § 464(a)–(c) (1972) (hereinafter the "1972 Act").

2021, requires not only that the defendant believe the use of force is necessary, but also that the defendant's belief be "reasonable."[4] Thus, what had been a purely subjective belief was amended to require both a subjective and an objectively reasonable belief.[5]

From Defendant's prior plea of Guilty But Mentally Ill, we may fairly surmise that there will be some expert disputations at trial over the Defendant's state of mind on the occasion in question. The likelihood that a jury would find Defendant's belief objectively "reasonable" will impose upon the Defendant a burden that he would not have had if the case were tried in 2017 as originally scheduled.

Thus, the defense has moved *in limine* that the jury be instructed on the law of justification as it existed at the time of the offense, without the 2021 amendment's requirement that he show that his belief in the justification was reasonable. He argues that application of the amended statute to him would violate the *Ex Post Facto* Clause of the U.S. Constitution.[6]

The State has responded that the *Ex Post Facto* Clause is not violated by application of the reasonableness requirement to him and the statute as amended should be the one read to the jury.

---

[4] The 2021 Act § 464(a)–(c).
[5] *Compare* the 1972 Act § 464(a)–(c), *with* the 2021 Act § 464(a)–(c).
[6] *See generally* U.S. Const., art. I, § 9.

## ANALYSIS

Almost a century ago, the U.S. Supreme Court in *Beazell v. Ohio*[7] set forth the modern standard for adjudicating *ex post facto* questions:

> It is settled, by decisions of this court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*.[8]

In the normal course of things, we would see *ex post facto* arguments raised when the legislature increases a criminal penalty or reduces the prosecution's burden and the prosecution attempts to apply that change to a class of offenses that occurred before the statute was amended. Raising a fine or mandating a jail sentence for behavior already committed is an archetypical *ex post facto* legislative act that cannot be given retroactive effect.[9]

Here, the legislation did not make proof of a crime easier or a punishment more onerous. Rather, the legislature removed a defendant's ability to argue that he had an *unreasonable* subjective belief that the circumstances warranted his use of force. Henceforth, only reasonable subjective beliefs that the use of force was

---

[7] 269 U.S. 167 (1925).

[8] *Id.* at 169–70 (italics added); *accord Collins v. Youngblood*, 497 U.S. 37, 42 (1990).

[9] *See generally Helman v. State*, 784 A.2d 1058, 1075–76 (Del. 2001).

justified are defensible. The question presented, therefore, is whether the 2021 amendment deprives the Defendant of a defense he could have raised before the amendments were enacted.[10]

In answering this question, both sides discuss a district court case, *United States v. Kowal*.[11] *Kowal* considered whether retroactive application of amendments made to the insanity defense by the Insanity Defense Reform Act of 1984 (the "IDRA") would violate the *Ex Post Facto* Clause to the extent the IDRA removed a defense afforded the defendant under the Model Penal Code that existed prior to the IDRA's enactment.[12] Relevant there, the IDRA eliminated the insanity defense's "volitional prong," thereby preventing the defendant from arguing that, "as a result of a mental disease or defect," he "lacked substantial capacity . . . to conform his conduct to the . . . law."[13] The IDRA also reallocated the burden of proving insanity from the government to the defendant, making acquittal possible only if the defendant demonstrated insanity by clear and convincing evidence.[14] In short, the

---

[10] *Chambers v. State*, 93 A.3d 1233, 1235 (Del. 2014) (internal quotation marks omitted).

[11] 596 F. Supp 375 (D. Conn. 1984).

[12] *See generally* 18 U.S.C. § 17 (1984) (amended on other grounds 1986). The IDRA was passed in the wake of the attempted assassination of President Ronald Reagan and the subsequent acquittal of John Hinkley by reason of insanity. *See United States v. Pohlot*, 827 F.2d 889, 896 (3d Cir. 1987) (describing history and effect on insanity defenses).

[13] Model Penal Code § 4.01(a) (Am. L. Inst. 1962).

[14] *Kowal*, 596 F. Supp at 379; *see Pohlot*, 827 F.2d at 896.

IDRA made it more difficult for the defendant to raise an insanity defense than it had been before the amendments were codified.

Given the substantive disadvantages caused by the IDRA, *Kowal* held retroactive application of the IDRA to the defendant would violate the *Ex Post Facto* Clause. In doing so, the Court applied the *Beazell* rule against eliminating previously available defenses: "'any statute . . . which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*.'"[15] The U.S. Supreme Court later affirmed this rule.[16] So did the Delaware Supreme Court.[17] *Kowal* thus supports Defendant's position that the amendment here is *ex post facto* and cannot be applied to Defendant.

Despite all this, the State says reliance on *Kowal* is misplaced. To advance its view of the *Ex Post Facto* Clause, the State resurrects from the archives a line of cases purporting to establish a different retroactivity standard. Although the Court appreciates a lesson in legal history as much as anyone, the State's precedents are little more than an intellectual curio and do not advance its cause.

---

[15] *Kowal*, 596 F. Supp at 377 (quoting *Beazell*, 269 U.S. at 169–70).
[16] *See Collins*, 497 U.S. at 42.
[17] *See, e.g.*, *Fountain v. State*, 139 A.3d 837, 841 (Del. 2016) ("It is a general rule that statutory amendments operate prospectively unless the legislature expressly states, to the contrary, that the amendments shall be retrospective . . . . A statutory amendment . . . may apply retroactively, when the amendment . . . does not affect substantive or vested rights." (cleaned up)).

The State first cites *Kring v. Missouri*,[18] a murder case from 1883. At that time, Missouri law treated a guilty plea to murder second degree as an acquittal of the more serious charge of murder first degree. Kring pled to murder in the second degree, thinking he had an agreement to be sentenced to no more than 10 years in prison. Instead, he was sentenced to 25 years. He appealed. But by the time the case was reversed and remanded, Missouri law had changed. Under Missouri's new constitution, a plea of guilty to second degree murder no longer acted as a bar to a subsequent prosecution for first degree murder. Free to prosecute the more serious charge, the State tried Kring for first degree murder, convicted him, and secured a death sentence.

Understandably upset by this turn of events, Kring went to the U.S. Supreme Court to argue the new law was invalid as *ex post facto*. Accepting Kring's arguments, the U.S. Supreme Court said:

> We are of opinion that any law passed after the commission of an offense which, in the language of WASHINGTON, in *U.S.* v. *Hall*, "in relation to that offense, or its consequences, alters the situation of a party to his disadvantage," is an *ex post facto* law; and in the language of DENIO, in *Hartung* v. *People:* "No one can be criminally punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offense was committed, and which existed as a law at the time."[19]

---

[18] 107 U.S. 221 (1883), *overruled by Collins*, 497 U.S. 37.
[19] *Kring*, 107 U.S. at 235 (first quoting *United States v. Hall*, 26 F. Cas. 84, 86 (C.C.D. Pa. 1809), *aff'd*, 10 U.S. (6 Cranch) 171 (1810); then quoting *Hartung v. People*, 28 N.Y. 400, 402 (N.Y. 1863)).

*Hall*, quoted above, was an 1809 case involving peril on the high seas. The "any law" that "alters the situation of a party to his disadvantage" language was surely broader than it needed to be. The same language, carried forward in *Kring*, the 1883 opinion, remained quite broad, as Kring's issue was a good bit more specific than a "situation" that was merely "disadvantaged."[20]

All this is by way of explaining why, in the 20th century case of *Collins v. Youngblood,*[21] the U.S. Supreme Court disavowed the "alters the situation of a party to his disadvantage" standard for analyzing *ex post facto* claims,[22] assuming it ever was a "standard" or essential to *Kring*'s judgment and was not simply some rather broad language in a case from long ago. After all, Kring's situation was not simply "disadvantaged;" the *ex post facto* law lifted his guilty plea and then converted his crime to a capital offense. Regardless, *Collins* deleted *Kring*'s "alters the situation" language and replaced it with *Beazell*'s rule against eliminating previously available defenses, calling the rule "faithful" to the "best understanding . . . of the *Ex Post Facto* Clause."[23]

---

[20] *See* James Boswell, 3 *Boswell's Life of Samuel Johnson* 167 (George B. Hill & L.F. Powell eds., Oxford Univ. Press rev. ed. 1934) (1791) ("Depend upon it, Sir, when a man knows he is to be hanged in a fortnight, it concentrates his mind wonderfully." (quoting Samuel Johnson)).

[21] 497 U.S. 37.

[22] *Id.* at 47–50.

[23] *Id.* at 43.

This is where the State's archeological approach digs itself into the proverbial hole. According to the State, *Collins* repudiated the standard utilized in *Kowal*. But *Collins* repudiated *Kring* and *endorsed Beazell*. And *Kowal* relied on *Beazell*, not *Kring*. So, it follows that *Collins*'s disavowal of *Kring*'s "alters the situation" rationale was hardly an endorsement of the State's argument that *Collins* effectively overruled *Kowal*. To reiterate, both *Collins* and *Kowal* relied on *Beazell*'s rule against eliminating a previously available defense, not *Kring*'s "alters the situation" formulation.

Thus, it is incorrect to argue, as the State does, that *Kowal* is not good law in light of *Collins*. Rather, it is so widely agreed that retroactive application of the amendments to the MPC's definition of insanity wrought by the IDRA would be *ex post facto* that no opinion has decided otherwise.[24] Indeed, it is the stated position of the U.S. Department of Justice that amendments like the IDRA amendments, which expand criminal liability by removing a previously available defense, are *ex*

---

[24] *See, e.g.*, *United States v. Samuels*, 801 F.2d 1052 (8th Cir. 1986); *United States v. Prickett*, 604 F. Supp. 407 (S.D. Ohio 1985); *United States v. Lakey*, 610 F. Supp. 210 (S.D. Tex. 1985); *see also People v. Ramsey*, 735 N.E.2d 533 (Ill. 2000) (same under comparable Illinois law); *People v. McRunels*, 603 N.W.2d 95 (Mich. 1999) (same under comparable Michigan law); *Anderson v. Dep't of Health & Mental Hygiene*, 528 A.2d 904 (Md. 1987) (same under comparable Maryland law); *United States v. Williams*, 475 F.2d 355 (D.C. Cir. 1973) (same under comparable D.C. law); *see generally United States v. Roy*, 830 F.2d 628, 637 (7th Cir. 1987) (summarizing state of *ex post facto* law in the context of the Insanity Defense Reform Act at the time of these decisions).

9

*post facto*.[25]   In other contexts involving similar amendments, that had been the position of the Delaware Department of Justice as well.[26]

Simply following the dictate of *Beazell*, reiterated by *Collins*, and aided by a review of *Kowal* and a small dose of common sense, gets us to what the Court believes is the only possible conclusion.   Removing the availability of an "unreasonable belief" that the use of force was justified and replacing it with a use of force that can only be justified if the actor's belief was "reasonable" was a substantive change to the law of justification in 2021.  The defendant whose beliefs were unreasonable lost the availability of a defense to the charge – a loss that "deprives one charged with a crime of any defense available according to law at the time when the act was committed."[27]   Thus, retroactive application of the

---

[25]  U.S. Dep't of J., Criminal Resource Manual § 637, https://www.justice.gov/archives/jm/criminal-resource-manual-637-insanity-present-statutory-test-18-usc-17a (last updated Jan. 22, 2020) ("The [IDRA] . . . is applicable to offenses committed *after* 1984." (emphasis added) (citing *ex post facto* caselaw)).  It also was the government's view at the time of *Kowal*. *See United States v. Teller*, 762 F.2d 569, 577 n.4 (7th Cir. 1985) (citing U.S. Dep't of J., Handbook on the Comprehensive Crime Control Act of 1984 and Other Criminal Statutes Enacted by the 98th Congress 58, 65 (1984)).

[26] *See Curry v. State*, 2017 WL 4679788, at *1 (Del. Oct. 17, 2017) ("The State concedes it was an *ex post facto* violation to apply the 2016 sentencing amendment to a 2015 offense . . . and that the law in effect at the time of the crime controls the sentence . . . ." (first omission in original) (alterations and internal quotation marks omitted)).

[27] *Collins*, 497 U.S. at 50 (internal quotation marks omitted).

"reasonable" belief amendment of the justification defense violates the *Ex Post Facto* Clause of the U.S. Constitution.[28]

To the extent a justification defense is fairly raised by the evidence, the jury in the Defendant's trial will be charged under the statute in effect at the time of the murder.

**CONCLUSION**

For the foregoing reasons, the Defendant's motion *in limine* is **GRANTED**.

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge

---

[28] *See id.* at 49 ("A law that abolishes an affirmative defense of justification . . . contravenes [the *Ex Post Facto* Clause] because it expands the scope of a criminal prohibition after the act is done.").